# Brown *v.* Waite, Appellant.

*Appeals—Assignments of error—New trial.*
1. A refusal of a new trial is not assignable as error.

*Malicious prosecution—Probable cause—Evidence—Grounds for belief —Province of court and jury.*
2. To support an action for malicious prosecution the plaintiff must show want of a probable cause. While it is exclusively the province of the jury to pass upon the testimony and to ascertain the facts, it is the duty of the court to say as a matter of law, where the facts are undisputed, whether the facts established do or do not amount to probable cause. What is the probable cause, and whether it exists under an admitted or clearly established state of facts, is a question of law for the court. The question is not whether the person charged with a crime was guilty, but what were the indications of his guilt. The test is the belief of the prosecutor in the existence of the probable cause, based on reasonable grounds. The question does not depend upon the actual state of facts in the case, but upon the honest and reasonable belief of the prosecutor. It is a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused party guilty of the offense.

Argued Oct. 14, 1908. Appeal, No. 62, Oct. T., 1908, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1906, No. 4,917, on verdict for plaintiff in case of Aubrey H.

Brown v. Henry F. Waite.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ.  Affirmed.

Trespass to recover damages for malicious prosecution.

KINSEY, J., charged in part as follows:

The question comes up to you to determine what were the motives of Dr. Waite in this prosecution; that is, in this arrest and imprisonment of Brown, this plaintiff.  In reaching a conclusion upon this, you will take all the facts in this case under your consideration.  You have heard them yesterday and to-day, they are fresh in your memories and you can recall them as clearly as I could reiterate them to you.  The transaction covered a period of about one week, from, I think, August 11 to 18.  On that Saturday night, or Sunday morning, the dog disappeared from in front of a saloon, into which Fisher, who had had the custody of him for Dr. Waite, had entered, leaving the dog upon the outside.  When he again came out on the street the dog had disappeared.  You heard the story of the disappearance and the finding of it upon the street by Keel, and his taking of it to his home, and also as to Brown's relations to the matter.  All the way through the case,—and I beg you will bear this in mind clearly,—all through the case you must discriminate Brown's relations to this transaction apart from those of the Keel family.

Brown's statement to you is that upon Sunday morning he saw that dog in the yard, he asked its history and was told that it had followed home one of the Keel boys in the nighttime; that on that afternoon he took it out upon the street for exercise; that he was accustomed to working, he tells you, at Cramp's at night and slept through the daytime.  This was Sunday that he took it for a walk upon the street, and that he had no further relations to the dog until he saw the advertisement in the "Bulletin" upon Monday afternoon, of $25.00 reward; that thereupon he and one of the Keel boys went to the address given in the "Bulletin," saw Fisher and Fisher said that he could not go that evening but upon Tuesday night he would come to the house where the dog was and identify it, if it was

his. He tells you he said that for the reason that he wanted the interval of time for consultation with Dr. Waite. On Tuesday night Fisher did go to the house, saw the dog and said it was not his dog. Brown says Fisher did not say that it was Dr. Waite's dog, but he said simply it was not his dog,— "this is not my dog that I advertised for." Fisher, as against that, says he said it was not his dog, it was Dr. Waite's dog; thereupon the report was made, I suppose, to Dr. Waite—we can infer—for the next day, Dr. Waite, this being Wednesday, paid a visit to the house and the trouble occurred at the window. Dr. Waite says that he was violently denounced by one of the Keel boys. The mother, who was on the stand this morning, says the doctor called him a rogue and a thief, or some words to that effect, which resulted in this altercation; thereupon Dr. Waite gives one of his young men, an assistant, as he tells you, $25.00 and likewise that he had the $25.00 reward with him to pay if needs be at the time of his morning visit, but that there was no tender of it, no offer of it or mention made either then or at any time. The two young men, the doctor's assistant and a friend, visited the neighborhood upon Wednesday evening, I think it was, and the answer given them was that the dog was out at that time for a walk with Brown; that they waited around for three hours, that neither dog nor Brown returning they returned and reported to the doctor. Thereupon next day the warrant was issued; a warrant was issued for the Keel boy and for Brown, the plaintiff here. The plaintiff was taken to a magistrate, and in default of bail was committed to prison, and while he was in prison, as I recall the testimony—my accuracy or otherwise is always for you—a search warrant was issued and possession of the dog was secured. Plaintiff was brought up again to the magistrate's and discharged and the case ended.

Now, it will be a question for you to say how far there came into the mind of Dr. Waite any knowledge that would lead a prudent man to the conclusion that Brown was guilty of anything relating to the theft of that dog. Did he have anything to do with the original getting of the dog? Was his action subsequently to its being brought to the house evidential of

any guilt upon his part in regard to this dog being stolen? Did Dr. Waite ever see Brown and ask him about the dog? Was it what the law would define in this case as malice, a reckless disregard of his duty to a fellow citizen, to Brown? The question will present itself to you, and your judgments and consciences must answer as to whether or not it was to avoid the payment of this $25.00 reward. Dr. Waite had it in his power at any time to take possession of this dog, either physically, if needs be, without breach of the peace, or by legal process which was open to him through the sheriff's office, which would have taken this dog for him. Was there an invasion of that most precious of all human rights, probably the most precious and sacred, that of personal liberty, for the sake of evading the payment of this $25.00 reward? In other words, was it a scheme to avoid payment of the reward? Did Dr. Waite act prudently and considerately? Should he have seen Brown and stated to Brown as he did to one of the Keel boys, "I am going to have you arrested for stealing my dog?" So that his explanation of all he knew of the matter might have been considered before arresting him. Was he ever brought into relations with Brown before? What information did he get upon which he issued this oath in the formal language that is prescribed for an oath of that kind where he says, "upon information and belief"? He takes it, he tells you, from a stranger, a woman across the street whom he was unacquainted with, and whose character for truth and veracity he did not know. She told him that Keel and Brown upon that night had taken the dog out on Girard avenue, or wherever the saloon or bottling establishment was, put a strap around the dog's neck and had taken him away.

The question comes simply to this: What was the mood of the mind of the doctor when he brought this prosecution? If it was honest, if he believed Brown stole his dog, or if he believed Brown was an accomplice of those who stole the dog, if he believed from good reliable sources such as a prudent man would be moved by, if he had just and honest cause for doing as he did, then of course he is not guilty and not responsible in damages. If, however, he was not so free from all these mo-

tives, such as malice, as the law calls it, if he was moved by some personal interest, if, as I said a moment ago, he was endeavoring to evade responsibility for the $25.00, if as he himself testified this morning that he had stated to his young man on that Wednesday 'evening, "Bring the dog back anyhow, but the dog and the $25.00, too, if you can,"—if you are convinced that was an indication of his motive, and you so find, then he may become responsible for unjustly prosecuting this plaintiff.

Verdict for plaintiff for $1,000 upon which judgment was entered for $300, all above that amount having been remitted.

*Errors assigned* were in refusing binding instructions for defendant and in refusing a new trial.

*C. Oscar Beasley*, for appellant.

*Evan B. Lewis*, for appellee.

OPINION BY ORLADY, J., February 26, 1909:

The second assignment of error, viz.: "The learned court below erred in refusing the defendant's motion for a new trial," has been so frequently held by both the Supreme and this court, not to be reviewable except for flagrant error, that it is not necessary more than to refer to Stern v. Johnson, ante, p. 1, filed December 15, 1908, in which the authorities are collated.

The first assignment of error is, "The learned court erred in refusing to charge that defendant was entitled to a verdict." The action is one for malicious prosecution, in which the plaintiff was discharged before the magistrate on the application of the prosecutor, after he had been arrested and committed to prison.

To support an action for malicious prosecution the plaintiff must show want of a probable cause. While it is exclusively the province of the jury to pass upon the testimony and to ascertain the facts, it is the duty of the court to say as a matter of law, where the facts are undisputed, whether the facts estab-

lished do or do not amount to probable cause. What is probable cause, and whether it exists under an admitted or clearly established state of facts, is a question of law for the court. The question is not whether the person charged with a crime was guilty, but what were the indications of his guilt. The test is the belief of the prosecutor in the existence of the probable cause, based on reasonable grounds. The question does not depend upon the actual state of facts in the case, but upon the honest and reasonable belief of the prosecutor. It is a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused party guilty of the offense: Robitzek v. Daum, 220 Pa. 61; Markley v. Snow, 207 Pa. 447; Campbell v. Sidwell, 20 Pa. Superior Ct. 183.

The real issue, whether the prosecution was brought in good faith, and on probable cause, was very clearly stated by the learned trial judge, and the instruction given to the jury was so clear, that there could be no doubt in regard to their application of the law to the disputed facts as submitted to them.

The case was carefully tried in the court below, and there was no substantial error of which the defendant has just ground for complaint. The judgment is affirmed.