Opinion by
Orlady, J.,
This is an action for malicious prosecution in which a verdict of $1,000 was rendered. The facts are so out of the ordinary, that a full statement of them is necessary to fairly dispose of the question involved. By the undisputed evidence it appears that Dr. A. B. Kalback was conducting a lumbering operation in Maryland, where he had in his employment, as a teamster, one Thomas McCoy, this plaintiff, at a wage of $25.00 per month with his boarding.
About ten o’clock of the evening of October 6, 1908, Dr. Kalback received a telephone message from his foreman of work on the ground that during the afternoon of that day, McCoy had been sent with a team of six mules and wagon, to take a load of lumber to Taneytown, and to have the mules shod at that place; that, it had been •noticed that the halters of the mules had been taken, and he had information that McCoy was driving the team away from Taneytown toward the city of York in Pennsylvania. Kalback at once telephoned to J. C. Stauffer, who resided in York, that his team had been stolen in Maryland, and he believed it would land in York; that he, Stauffer, “should employ an attorney, and an officer, and have the man arrested and taken care of; to get the thief and the team if he possibly could; to get the man who took the mules, so that the law would deal with him.”
*371 . Stauffer admitted receiving the phone message and promptly tried to find his attorney, but was unable to do so that evening, and went to Squire Amig, an alderr man, stated the facts and then made an affidavit. “On information and belief, as agent for A. M. Kalback, that on October 6, 1908, a certain Thomas McCoy, at the city and county of York did feloniously steal and take away six mules, a wagon and chains, etc., of the value of $1,000.00 being the property of A. M. Kalback.”
A warrant was issued and McCoy was arrested at 1.30 a. m. of October 7, while driving the team about two miles from York. He at first resisted arrest, and stated, “I claimed the team as my own,” but was taken by the officer to jail, where he was detained from 4 to 9 a. m. when he was released on bail for his appearance at a hearing to be held on October 15.
On the morning of the 7th inst. Kalback, and Stauffer, went with their attorney, Mr. Hoober, and after investigating' the facts and record, the attorney notified his client and the alderman that “he had no case in Pennsylvania, the jurisdiction if it attached at all, was in Maryland, and it must be discharged on the ground of lack of jurisdiction.” The hearing being fixed for a week later; the alderman was at that time notified to not issue a subpoena for witnesses, that it was a useless expense, and when the time arrived for the hearing he should simply discharge the case without requiring witnesses to be present. Dr. Kalback asked if there were any costs to be paid and was told, “No, not in a discharged case.” Kalback stated to the alderman, “We end it all here, and withdraw the information,” and the alderman replied, “That ends it.”
Mr. Hoober then gave Dr. Kalback a letter of introduction to the district attorney of Carroll county, Maryland, and on the advice of counsel an information' was promptly made there against McCoy for the offense committed in Maryland.
*372 For some reason not given, the alderman, in direct violation of the instruction given by Dr. Kalbaek and his attorney, made a return of the proceedings to the court of quarter sessions, where an indictment was presented to the grand jury, after notice by Mr. Hoober to the district attorney, “that the case had been discharged for want of jurisdiction and requested that no bill should be sent to the grand jury.” As stated by Mr. Hoober, “The arrangement between us was, that nothing further should be done, and that no bill should be presented to the grand jury,” and notice of this was given to Mr. Stauffer, who had been subpoenaed.
Despite this a bill was presented, without the knowledge of Kalbaek, Stauffer or Hoober, and without any witnesses being called for the commonwealth; on October 20 it was returned “not a true bill.”
The indictment contained two counts, one for larceny, the other “for receiving stolen goods knowing them to have been stolen.”
On June 26, 1909, this action for malicious prosecution against Kalbaek and Stauffer was brought, and on the trial all evidence of McCoy’s employment, and relation to Kalback’s business, and of the clandestine flight in the night by McCoy, and the information on which Kalbaek acted in regard to money the team from Maryland was rejected, for the reason that the evidence showed that the larceny was complete in Maryland and was not probable cause for such a prosecution in Pennsylvania.
Another offer was made by the same evidence, for the purpose of showing absence of malice and in mitigation of damages, and was rejected for the same reason.
The defendants offered to prove that McCoy had endeavored to purchase the team in Maryland, but his offer was refused unless security would accompany it, for the purpose of contradicting him in his statement that, “I claimed the team was my own,” and rejected, the court saying, “The only question in this case is whether or not these defendants had probable cause to believe McCoy *373 guilty of larceny of the mules in York in Pennsylvania.”
The same view is expressed by the learned trial judge a number of times during the trial in his charge to the jury, (seventh assignment); he states: “It appears to the court that there could be no honest belief on the part of the defendant Kalback, that a larceny was committed in the' county of York, when all the evidence in the case showed that he was aware of the fact that this property was in Maryland. He could not believe, in the opinion of the court, that this man was guilty of larceny in York, and therefore the testimony was excluded to show why Kalback ordered this prosecution, entertaining such a belief as a man of ordinary intelligence would believe, made this man guilty of the offense with which he was charged before the alderman,” and again, “The proof of malice in this case is, the action of the parties in bringing the prosecution in Pennsylvania when the larceny -took place in Maryland,” and in answer to the defendants’ third point (fifteenth assignment): “If, in the opinion of the jury the circumstances shown by the evidence present such an appearance of guilt as naturally to induce its belief in the mind of a reasonably prudent man, it is such probable cause as the law requires for his justification, even though the appearances prove deceptive or the circumstances are misapprehended,” which was answered, “the point is affirmed, as a correct statement of the law. It is not applicable to this case for the reason stated in our answer to the first point — that if any larceny of the team was committed it was committed in the state of Maryland and not in the county of York, and this defendant, Kalback, knew this fact.” The whole defense was contained in the defendant’s offer (second assignment) which set out all the facts, both in Maryland and in Pennsylvania, for the purpose of showing probable cause, and when objected to by the plaintiff, the learned trial judge, in the first instance, decided that it was admissible “to show under what influence Kalback was acting when he *374 gave the order, and. to show probable cause for rebutting malice,” and “at that rate criminals would not be apprehended when they escaped from the jurisdiction without getting an indictment against them first. It is always customary to have them apprehended to wait for the proper officer from the state from which he escapes. This is constantly being done. Criminals are constantly apprehended in every place, and detained until authorities from the state from which they escape appear, and it is necessary to protect the public.” The record discloses that there was a lengthy argument on this question, continuing through the whole afternoon, and held over by the trial judge until the next morning, when he changed his view of the law and rejected the evidence. With such a debate by able attorneys, and such deliberation by á trial judge of many years’ experience, with a direct change of view as to the technical legal proposition, it seems' like imposing an unreasonable burden on a layman to decide such a question of jurisdiction, under such exigent conditions as Kalback acted upon when he directed the capture of his property. That the question is open to debate is shown by the radical difference of opinion by able jurists and learned text-book writers, as to whether the bringing into a state of goods stolen in another state is larceny in the state in which the stolen goods are brought, if it is not so specially declared by statute; and a like difference of opinion exists, as to whether the bringing into one state of goods that have been stolen in another jurisdiction, does not justify a conviction of receiving stolen goods in the latter state if knowledge of the original larceny be shown. See Montana v. Kief, 15 L. R. A. 722, and notes; 18 Am. and Eng. Ency. of Law, 525, and notes.
For the purposes of the case before us, it is not necessary to reconcile the many hostile opinions, as we have from our own Supreme Court, a definite and binding declaration on the subject.
In Simmons v. Commonwealth, 5 Binn. 617, decided in 1813, the defendant was convicted in Philadelphia upon *375 proof that “he did feloniously steal, take and carry away certain goods and chattels within the state of Delaware and that he brought the same into the city of Philadelphia.” Upon review of this record the three eminent judges, Tilghman, Yeates and Brackenridge, deemed the question of such doubt and gravity, as to file separate opinions in which the law of the subject is carefully reviewed, and held, “that a person who steals goods in another state, and brings them with him into this state cannot be indicted here for a felony. He is to be treated as a fugitive from justice.” While reversing the judgment of the court below they directed that the defendant be detained for three weeks after notice to the executive of Delaware, so as to enable him to make proper demand for his return. This was followed in Commonwealth v. Kunzmann, 41 Pa. 429, in which it is said, “There are insuperable objections to any criminal court in this state, taking cognizance of any of the statutory offenses created and punished by our law, when committed beyond our jurisdiction.” As we have no statute on this subject the conclusion of the trial judge was correct as to sustaining a conviction of McCoy in this state under the facts.
This appeal stands on entirely different ground, and the authorities are numerous and convincing, holding that it has ever been held that an action for malicious prosecution can be maintained only where the plaintiff can make it appear, (1) that the defendant in his attempted prosecution had no probable cause upon which to found it, and (2) that he was actuated by malice. If the defendant is able to show probable cause, that is" sufficient for his protection, and in that case, his motive-for the prosecution is not to be considered : Gilliford v. Windel, 108 Pa. 142, as held in Smith v. Ege, 52 Pa. 419; and in Seibert v. Price, 5 W. & S. 438, “The question turns not upon the actual statement of the case, but upon the honest and reasonable belief of the party prosecuting.” The substance of all the definitions is a reasonable ground for belief of guilt. It can make no difference what induces the belief, if it *376 be reasonably sufficient: a reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of the offense: Cooper v. Hart, 147 Pa. 594; Robitzek v. Daum, 220 Pa. 61; Cole v. Reece, 47 Pa. Superior Ct. 212.
What is probable cause, and whether it exists under an admitted or clearly established state of facts, is a question of law for the court. The material facts that were received in evidence, coupled with the offers that were rejected, and which we are to assume would have been developed in proof as offered, established such a condition of affairs as made by McCoy, that Kalback had a reasonable right to believe that McCoy had stolen his mule team, and wagon in Maryland, and was bringing them, clandestinely, by night into Pennsylvania. The disputed theoretical proposition as to which court had jurisdiction of this admitted larceny was not conclusive of the question. He had the right to apprehend the thief and recover his property, and he could have secured able advocates for either side of the jurisdictional question: he was not obliged to settle that proposition before he invoked the aid of the law. If the excluded testimony was credible, there was abundant evidence of probable cause. See Mitchell v. Logan, 172 Pa. 349; Roessing v. Pittsburg Rys. Co., 226 Pa. 523; Boyd v. Kerr, 216 Pa. 259; Brown v. Waite, 38 Pa. Superior Ct. 216. It is not necessary to consider the assignments which raise the other questions, and they are not disposed of.
The judgment is reversed and a v. f. d. n. awarded.