## Bosley *v.* Gerrity, Appellant.

*Malicious prosecution—Probable cause—Case for jury.*

In an action of trespass for malicious prosecution the case is for the jury, where it appears that the plaintiff, a young domestic servant, was charged with larceny by her employers, and upon mere suspicion, and without adequate investigation, was arrested and sent to jail for want of bail; that subsequently the indictment against her was ignored; that shortly thereafter the goods alleged to have been stolen were found; and that this fact was not communicated to the plaintiff by the prosecutors until the trial of the trespass case.

Argued Oct. 8, 1913.  Appeals, Nos. 18 and 19, Oct. T., 1913, by defendants, from judgment of C. P. No. 3, Phila. Co., March T.; 1911, No. 4,895, on verdict for plaintiffs in case of Mabel Bosley by her father and next friend, James T. Bosley, and James T. Bosley v. John Gerrity and Julia Gerrity.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Trespass to recover damages for malicious prosecution. Before DAVIS, J.

The plaintiff was charged on the magistrates' docket with "Suspicion of Larceny."

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Mabel Bosley for $200 and James T. Bosley for $60.00.   Defendants appealed.

*Errors assigned* were various instructions.

*Thomas H. McCaffrey*, for appellants.—There was no case for the jury: Smith v. Ege, 52 Pa. 419; Gilliford v. Windel, 108 Pa. 142; Mahaffey v. Byers, 151 Pa. 92; Mitchell v. Logan, 172 Pa. 349; Bruff v. Kendrick, 21 Pa. Superior Ct. 468; Cole v. Reece, 47 Pa. Superior Ct. 212; Com. v. Storey, 49 Pa. Superior Ct. 282; Grohmann v. Kirschman, 168 Pa. 189; Robitzek v. Daum, 220 Pa. 61; Hantman v. Hedden, 31 Pa. Superior Ct. 564; Scott v. Dewey, 23 Pa. Superior Ct. 396; Boyd v. Kerr, 216 Pa. 259; Roessing v. Rys. Co., 226 Pa. 523; McCoy v. Kalbach, 51 Pa. Superior Ct. 364.

*Clarence N. Callender*, with him *Warren C. Graham*, for appellees.—The case was for the jury: Schofield v. Ferrers, 47 Pa. 194; McCoy v. Kalbach, 51 Pa. Superior Ct. 364.

It was held in Rhoades v. Van Phillips, 9 Del. County, 423, that where a person is arrested on a charge not constituting a crime, the jury may infer from that fact that the prosecution was without probable cause.

In the case of Brobst v. Ruff, 100 Pa. 91, it was held that in an action for malicious prosecution a defendant cannot show that he acted on the advice of a justice of the peace in instituting the prosecution.

OPINION BY ORLADY, J., December 8, 1913:

Two appeals are here presented, one by Mabel Bosley, by her next friend and father, and another by James T. Bosley in his own right, against the defendants, for the

malicious prosecution of the plaintiff, Mabel Bosley. The verdicts recovered were in favor of Mabel Bosley for $200, and in favor of James T. Bosley for $60.00. The court overruled a motion for judgment non obstante veredicto and judgments were entered on the verdicts.

The facts developed on the trial are as follows: On March 3, 1911, Mabel Bosley, the plaintiff, seventeen years of age, was employed by the defendants as a domestic servant in their home, and continued in that relation until March 29, when she was discharged, and arrested on an information made by John Gerrity, the husband, in which she was charged with suspicion of larceny. When arrested by an officer, she was taken in a patrol wagon to City Hall, photographed, and her physical description made of record. She was held by the alderman for a hearing and afterward, for action by the grand jury, and failing to obtain bail she was detained in Moyamensing Prison until April 5, on which day the grand jury ignored the bill of indictment and she was discharged.

The testimony disclosed that on March 23, she was directed by Mrs. Gerrity to attend to some special housework, and among other things to prepare for delivery to Gimbel Brothers driver a chiffonier, "and to take everything out of the drawers, and put it on the bed before the driver removed it from the house." Mrs. Gerrity was not at home when the furniture was taken from it, and soon after her return she noticed that "six sheets and a white spread that she knew of being in one of the drawers of the chiffonier were missing." She at once asked Mabel where they were, and was told "All the sheets I had seen I had taken out of the chiffonier drawer and laid them on the spare bed." The girl was directly charged with stealing this property, and while she made a specific and prompt denial of knowledge of their whereabouts, Mrs. Gerrity insisted, "You must have seen them and taken them, there was no one here

but you to do it.  I do not think you have taken them yourself, because you seem to be very innocent, but I believe your stepmother has made you take them." At this junction Mr. Gerrity was telephoned for and said to the plaintiff, "You had better tell where they are. If you don't, I will have you arrested.  If you have sold the things and got money for them, tell me what you sold them for, and I will not say anything to my wife or your father or to your stepmother, and I will give you $10.00 besides."  The father of the girl was then sent for, when she again denied any knowledge regarding the loss of the linen.  On the following Saturday, Mabel went to her home and returned at 5 o'clock p. m., and then told Mrs. Gerrity that her stepmother had said, "That if Mrs. Gerrity had put the sheets in my room to make believe I stole them, to tell her to take them out."  This was repeated to Mr. Gerrity when the girl was directed to leave, but no further action was taken until the following Wednesday, when she was arrested.

On the trial, Mrs. Gerrity testified, that when the articles were missed, she went on the same day to Gimbel Brothers, to whom the chiffonier had been sent, to make inquiry for the missing articles.  The furniture was traced by its number at the warehouse, and she was informed that nothing had been found.  On April 14 following, all the articles were found in a drawer of the chiffonier in the warehouse.  In reply to an inquiry by the court viz.: "When you first went to Gimbel Brothers they could not find these articles?" and Mrs. Gerrity replied, "No, your honor, and everything was going on very nicely.  We did not accuse her, I never accused Mabel of taking the things.  I simply asked her if she knew where they were, and when she brought back a message from her mother that she thought I must have taken the things myself to get her into trouble, I felt I could not have her in the house any longer."  She further testified, "Q. You had no reason

to believe that she had taken the sheets? A. I had no reason whatever. Q. As a matter of fact she did not take the sheets—you found that out afterward? A. I found that out afterward. Q. You found that out in April, about two weeks after she was arrested? A. I never told Mabel that I had found them. Q. You never sent for Mabel and told her you were sorry for this arrest, and that the sheets were found? A. No, by my actions and conduct I gave her every reason to think I believed in her. Q. You made no effort to clear up the charge against her? A. I suppose I did not, except to take her back. Q. You took her back in your employ in September? A. Yes, sir."

The undisputed facts in the case are, that the bed linen disappeared from the defendant's house about the same time the chiffonier was taken away; that Mabel was promptly charged with their theft and she emphatically denied any knowledge of their whereabouts; that inquiry was promptly made of Gimbel Brothers, and the only information received by Mrs. Gerrity in regard to them was that neither the chiffonier nor the linen could be located. The warrant for her arrest was dated March 28, 1911, and soon thereafter, in April, Mrs. Gerrity had conclusive proof of the fact that her property had been found in a drawer in the chiffonier in Gimbel Brothers warehouse, and which fact was never communicated to this young girl or her father until the time of this trial. This action was begun on May 17, and, doubtless, had information been promptly given of the recovery of the property, which fully exculpated Mabel of any wrongdoing, this litigation would have been avoided. The reputation of a domestic servant for honesty is of first importance to her, and the lack of prompt and fair inquiry on the part of the defendants before the warrant was issued made this a perfectly proper case for submission to a jury.

In an action of this character it is necessary to a recovery that want of probable cause and malice must be

proved. Want of probable cause having been shown, malice may be inferred, but it is indispensable that it affirmatively appear that the prosecution was instituted without probable cause. Whether an established state of facts amounts to probable cause is a question of law. If there be a dispute as to the facts, the question must go to the jury. As said by Judge Porter in Bruff v. Kendrick, 21 Pa. Superior Ct. 468, "Probable cause does not depend upon the guilt or innocence of the plaintiff, but upon appearances deduced from facts known to the defendant and information received by him, and properly investigated, of a character to produce in the mind of a reasonably prudent and cautious person the honest belief that the crime charged had been committed. Citing Mitchell v. Logan, 172 Pa. 349. Applying this test to Mrs. Gerrity's statement on the witness stand, that she had no reason whatever to believe that Mabel had taken the bed linen, and her silence in regard to their recovery, is evidence of a lack of proper investigation of a matter of so vital importance as the reputation for honesty of a young girl. Had they waited until the chiffonier had been found, the whole question would have been solved. Instead of an honest belief that the crime charged had been committed, it was but a mere suspicion, without any fair inquiry into the facts. While it is exclusively the province of the jury to pass upon the testimony and ascertain the facts, it is the duty of the court to say, as a matter of law, whether the facts established do or do not amount to probable cause: Robitzek v. Daum, 220 Pa. 61.

In an action for malicious prosecution the question is not whether the person charged with a crime was guilty, but what were the indications of guilt? And the test is the prosecutor's belief of the existence of probable cause based on reasonable grounds. Several important facts were in dispute in this case, and the inferences to be drawn from the testimony of both of the defendants made it a proper subject for decision by a jury to

determine whether they made a proper and reasonable investigation of the facts, and whether a prudent and cautious person would be justified in believing from the facts they knew or should have known, that the larceny of this linen had been committed by Mabel Bosley.

The public interests demand that courts shall not frown upon honest efforts to bring guilty parties to justice. It is just as true that individuals are to be protected against rash, wanton and causeless prosecution, Mehaffey v. Byers, 151 Pa. 92; Cole v. Reece, 47 Pa. Superior Ct. 212; Com. v. Storey, 49 Pa. Superior Ct. 282; Roessing v. Pittsburg Rys., 226 Pa. 523; McCoy v. Kalbach, 51 Pa. Superior Ct. 364.

While the warrant of arrest was founded on the affidavit of John Gerrity, the wife was so actively identified with the proceedings and there being no request for special instructions as to any particular defense as to the wife, it was proper to submit the case to the jury as to both of them.

The judgment is affirmed.