## Smith v. Patton et al.

*Charles W. Eaby*, for plaintiff and rule; *H. Edgar Sherts*, for defendants.

LANDIS, P. J., Jan. 19, 1929.—This was an action for malicious prosecution, wherein the court, on trial, directed the jury to render a verdict in favor of the defendants. The facts were uncontradicted, and the question to be determined is whether, under them, the plaintiff was entitled to go to the jury.

It appears that the defendants lived in the village of Rawlinsville, in Martic Township, this county. About 11 o'clock on the night of April 30, 1926, two automobiles, with a number of men in them, came to the said village. Mr. Patton said they were shooting and swearing, and a half-gallon measure was thrown through his window. They then went farther up the road. Mr. Campbell, who lived in that direction, heard some shots fired near his place and one more after they left. They threw stones at his house, one of which went through the window and back through the side room against the organ. Another hit the second-story window, but did not go through the glass, and others went against the house and porch. When these men got to the Zell house, which was across the road from Campbell's, but a little farther down, they stoned the house. One big stone broke a window-pane and the blind, and about seven stones were thrown on the roof, which was covered with slate, breaking several of them. Mr. Patton recognized some of the men—the Rankins and a man by the name of Addison Trimble, and he also saw a big man behind one of the automobiles whom he could not positively recognize. Mary Huber, who lived near the Patton house, heard one of the men call out, "Al, Ho! Al." She said that Albert Smith frequently traveled with the Rankins. She told the defendants what she had heard, and that she thought one of the men was Albert Smith, though she was not sure.

On May 3, 1926, John M. Patton and John K. Campbell made a complaint before Alderman O. E. Herr, of Lancaster City, against Edward Rankin, Edward H. Rankin, Jr., Lloyd Rankin, Addison Trimble, Albert Smith and George Kiphorn, charging them with malicious mischief. The case was returned to September Term, 1926, No. 91, and a true bill was found by the grand jury. It came on for trial before the late Judge Hassler, and Judge John M. Groff, who was then practicing law, together with the assistant district attorney, represented the Commonwealth. When the testimony on the part of the Commonwealth was all presented, Judge Hassler intimated that the defendants could not be convicted of malicious mischief, but might be liable for riot. The Commonwealth thereupon, with the consent of the court, entered a *nol pros*.

With the knowledge of all the facts elucidated by the testimony, Judge Groff, with the present defendants, who were his clients, went before Alderman John F. Burkhart and made a complaint against the parties above named, and also against William Rhoads and John Kohler, for riot. The complaint was made in the presence of and by the advice of Judge Groff. A hearing was had and the alderman dismissed the complaint against Smith and some of the others and made a return to the Court of Quarter Sessions against the three Rankins and Trimble. The ground of the dismissal of the case against Smith was that the witnesses did not positively identify him. Smith then brought this suit for damages. There was no dispute in the testimony on the part of the defendants or the plaintiff as to the facts, and it especially was brought out in the plaintiff's evidence that the complaint was made in the presence of Judge Groff and by his direction.

It will not be disputed that in cases of this character the basis of the action must be want of probable cause and malice. Probable cause is a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused party is guilty of the offense: Robitzek v. Daum, 220 Pa. 61. Every public prosecution is presumed to have been instituted upon probable cause, and the burden is at first upon the plaintiff in an action for malicious prosecution to prove want of probable cause: Walter v. Sample, 25 Pa. 275. However, proof that the plaintiff has been dis-

charged by the examining magistrate is *prima facie* evidence of want of probable cause and is sufficient to shift the burden of proof upon the defendant: Barhight *v.* Tammany, 158 Pa. 545. The question of probable cause is a mixed question of law and fact. Where the facts in the institution of the criminal proceedings raise a presumption of malice, the case is to be determined by the jury; but since probable cause is a complete defense, where that is shown to exist, the question of malice is unimportant and there can be no recovery: Jones *v.* Matheis, 17 Pa. Superior Ct. 220; Lipowicz *v.* Jervis, 209 Pa. 315.

In an action for malicious prosecution, the question is not whether the person charged with crime is guilty, but what were the indications of his guilt. The test is the prosecutor's belief of the existence of probable cause based on reasonable grounds. Where there has been a failure to show want of probable cause, it is the duty of the court to enter a non-suit or direct a verdict for defendant. But what is probable cause and whether it exists under an admitted or clearly established state of facts is a question of law for the court: Boyd *v.* Kerr, 216 Pa. 259; Robitzek *v.* Daum, *supra;* Brown *v.* Waite, 38 Pa. Superior Ct. 216; Roessing *v.* Pittsburgh Rys. Co., 226 Pa. 523. In Bernar *v.* Dunlap, 94 Pa. 329, it was held that plaintiff's own evidence showed the existence of probable cause and that a non-suit was properly entered. In Cooper *v.* Hart, 147 Pa. 594, and Mahaffey *v.* Byers, 151 Pa. 92, judgments on verdicts for the plaintiffs were reversed without a *venire*, on the ground that the uncontradicted evidence established probable cause.

In Burgman *v.* Rosenstein, 22 Lanc. Law Rev. 235, a verdict was directed in favor of the defendant. It was shown that an anode of gold was missing from the silverplating establishment of the defendant. A few minutes after 12 o'clock it was taken from an electric bath and placed in a box in the same room near where the plaintiff, who was an employee, was eating his dinner. The plaintiff was left alone in the room a few minutes after 12 o'clock. The plaintiff's attention had been previously attracted to the piece of gold and he asked one of his fellow-employees whether it was pure gold. At 1 o'clock of the same day the gold was missing and could not be found. The plaintiff said that he was not going to leave the room during the noon hour, that is, between 12 and 1 o'clock, when he was asked the question by the foreman. When questioned after the loss of the gold had been discovered, he denied having been out of the room during that hour; but when confronted by the statement of a person who saw him go out, he admitted he had been out for a few minutes. A very careful search was made for the gold in the building, but it was not found. These facts were all submitted to the defendant, who made a most thorough investigation, lasting until Oct. 31, 1903. He then submitted all the facts to his counsel, and, on the advice of his counsel, he directed that a complaint for larceny be made against the plaintiff. The plaintiff was finally discharged, after he had been confined in prison from Nov. 4, 1903, the day on which he was arrested, until Nov. 11, 1903, the day of his discharge.

In McCoy *v.* Kalbach, 51 Pa. Superior Ct. 364, it appeared, by undisputed evidence, that Dr. A. B. Kalbach was conducting a lumber operation in Maryland, where he had in his employ, as a teamster, Thomas McCoy. One J. C. Stauffer, who resided in York, Pennsylvania, received a telephone message from Kalbach to the effect that his team of mules had been stolen in Maryland, and, in pursuance thereof, Stauffer made a complaint before an alderman against McCoy for larceny. McCoy was arrested while driving a team about two miles from York, which team he claimed as his own. Subsequently, after consulting counsel, who advised him that he had no case in Pennsylvania,

McCoy was discharged on the ground of lack of jurisdiction. It was decided that Kalbach was not bound, before he caused the arrest, to determine whether the courts of Pennsylvania had jurisdiction; that probable cause was sufficiently shown and a verdict was properly entered for defendant, where it appeared that, after buying the mules from the plaintiff, the defendant employed him as a teamster in Maryland; that, soon after, he was informed that the plaintiff had started with the mules toward Pennsylvania, under suspicious circumstances, and caused his arrest in this State, but abandoned the prosecution on being advised by counsel that larceny, if any, had been committed in Maryland; that the defendant's motives in such a case are not to be considered. This case was affirmed by the Supreme Court in McCoy v. Kalbach, 242 Pa. 123. See, also, McCarthy v. De Armit, 99 Pa. 63.

In Walter v. Sample, supra, it was held that if the prosecutor has fairly submitted to his counsel all the facts that he knows are capable of proof and has acted bona fide on the advice given, he negatives, if not the malice, the want of probable cause and is not liable to an action for malicious prosecution, even though the facts did not clearly warrant the advice and prosecution. And in Laughlin v. Clawson, 27 Pa. 328, it was held that, in an action for malicious prosecution, probable cause is a question of law, and if specific instructions to that effect are demanded, it is error not to give them according to the facts of the case; that such action cannot be sustained if an officer of the State, appointed because of his legal learning, considers that a given state of facts is sufficient evidence of probable cause. See, also, Cole v. Reece, 47 Pa. Superior Ct. 212. In Barhight v. Tammany, supra, it was said: "The legal advice which constitutes a defense to an action for malicious prosecution must rest on an honest and full presentation to counsel of all the facts within the knowledge of the prosecutor, or which he has reasonable ground for believing he is able to prove." In McClafferty v. Philp, 151 Pa. 86, the court said: "According to the undisputed evidence, Mr. Hays, a reputable member of the Venango County bar, had full knowledge of all the transactions out of which the prosecution grew, and it was under his advice that it was commenced and conducted until it was ended by the nolle prosequi. There was no evidence tending to show that his advice was not sought and acted on by the defendant in good faith. Nothing is better settled than that when the prosecutor submits the facts to his attorney, who advises they are sufficient, and he acts thereon in good faith, such advice is a defense to an action for malicious prosecution. Strictly speaking, taking advice of counsel and acting thereon rebuts the inference of malice arising from the want of probable cause: McCarthy v. De Armit, supra; Emerson v. Cochran, 111 Pa. 622."

In the present case, the advice of Judge Groff was not based upon the statements made to him by his clients. He, being in court at the trial for malicious mischief, heard all the witnesses and was fully acquainted with the facts. It would have been futile for the defendants to have informed him the extent of their proof before he advised them to make this complaint, because he was fully cognizant of any and all facts which they could convey to him. It seems to me to be clear, from all the undisputed facts surrounding the prosecution and also because the complaint was made by them in the presence and by the direction of their counsel, who had full information of all the circumstances of the case, that there was probable cause shown for the complaint, and that, therefore, the plaintiff was not entitled to recover, and the jury were properly instructed to that effect. For these reasons, the rule to show cause why a new trial should not be granted is discharged. Rule discharged.

From George Ross Eshleman, Lancaster, Pa.