## Commonwealth, ex rel., v. Bentz

*Bernard M. Goodman* and *Philip Rusgo*, of the New York Bar, for relator. *William A. Frack*, assistant district attorney, for respondent.

STEWART, P. J., November 1, 1934.—This is a hearing upon a writ of habeas corpus granted upon a petition of George Stern, who was charged in two detainers lodged with the warden of the Northampton County Prison with being

a fugitive from justice from the State of New Jersey. The petitioner alleged that he was illegally detained in prison, and prayed to be admitted to bail. It was stated on the argument that a requisition had been asked for, and that two indictments had been returned against the relator in New Jersey, each charging him with "hold-ups"; that is, with robbing the proprietors of two stores in Newark. No copies of the indictments were presented to us, and nothing but assurances was given that the requisition would be asked for, but the State of New Jersey was represented not only by our assistant district attorney but by police officials from Newark, who testified as to relator's identity with the defendant in the indictments and offences charged. The sole question now is, has the relator a right to be admitted to bail? The Constitution of the United States, article 8 of the amendments, provides as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The Constitution of Pennsylvania provides, art. I, sec. 14, as follows: "All prisoners shall be bailable by sufficient sureties, unless for capital offences when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it."

The Act of April 21, 1927, P. L. 327, known as the Uniform Criminal Extradition Act, provides in section 16 as follows: "Bail; . . . . Unless the offense, with which the prisoner is charged, is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, the judge or magistrate must admit the person arrested to bail, by bond or undertaking, with sufficient sureties, and in such sum as he deems proper, for his appearance before him at the time at which he receives the warrant of the Governor of this State, not exceeding thirty days thereafter, and for his surrender to be arrested upon the warrant of the Governor of this State."

The learned counsel for the relator contends that the Constitution of Pennsylvania and section 16 of the act quoted above confer an absolute right on the relator to be now admitted to bail. He urges that the words "all prisoners" in the Constitution mean all who are detained in any prison, and that the act, which is entitled "An act relating to the extradition of persons charged with crime and to make uniform the law with reference thereto", conclusively demands that we must admit this prisoner to bail. The position of the district attorney is that there is no specific offence known to the Pennsylvania law as the crime of being a "fugitive from justice"—that is to say, there is no statute in Pennsylvania making a "fugitive from justice" a crime; that the crime was committed in New Jersey, and that Pennsylvania's aid is only auxiliary to New Jersey's proceeding; and he earnestly urges that the sections of the Constitutions of the United States and Pennsylvania and the Act of 1927, relating to bail, have nothing to do with the present question. His position is that this matter in its essence is a Federal one, governed exclusively by article 4, sec. 2, of the Constitution of the United States, as follows: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime"; and by the Act of Congress of February 12, 1793, RS §5278 (18 USC §662), which were passed to put into effect the provisions of the Constitution of the United States. It will be perceived that there is no reference to the taking of bail in the provision of the Federal Constitution referring to "fugitives from justice", nor in the acts of Congress last quoted. On the contrary, the act of Con-

134

gress provides that he may be detained in prison for a period of six months, to enable the demanding State to act. The present question has been decided both ways by State courts of the very highest authority, and by the Federal courts. Those opinions are all referred to in 18 USCA, Vol. 3, 324. In the limited time at our disposal, we have read a great many of the conflicting opinions, and are inclined to the belief that this relator ought not to be admitted to bail at the present time, for the reason that section 16 of the Pennsylvania Act of 1927 is in conflict with the Constitution of the United States and the acts of Congress passed regarding fugitives from justice, insofar as makes it mandatory on this court to admit the relator to bail. Whether, in the exercise of our discretion, we could admit to bail under our common-law power is a different question. The Supreme Court of the United States, in Wright v. Henkel, 190 U. S. 40, referred to this question without deciding it. Judge Lacombe denied the application. On appeal, Mr. Chief Justice Fuller (p. 63) said: "We are unwilling to hold that the Circuit Courts possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief. Nor are we called upon to do so as we are clearly of opinion, on this record, that no error was committed in refusing to admit to bail, and that, although the refusal was put on the ground of want of power, the final order ought not to be disturbed." Our practice has always been to hold a fugitive from justice for a limited time without bail. This was the course followed in Simmons v. Commonwealth, 5 Binn. 617, where the Supreme Court set aside a conviction for bringing stolen goods from Delaware into this State. The Supreme Court (p. 630) made an order for the prisoner's discharge in 3 weeks unless in the meantime a demand should be made agreeable to the Constitution of the United States. See also McCoy v. Kalbach, 51 Pa. Superior Ct. 364, Commonwealth v. Mulholland, 6 Phila. 280, and Commonwealth v. O'Neill, 10 Dist. R. 227. This subject of fugitives from justice is a most interesting one. Excellent discussions are found in Commonwealth v. Deacon, 10 S. & R. 125, Dows' Case, 18 Pa. 37, Thatcher's Requisition, 18 Pa. Superior Ct. 533, Commonwealth, ex rel., v. Hare, 36 Pa. Superior Ct. 125, Commonwealth, ex rel., v. Steele, sheriff, 78 Pa. Superior Ct. 352, and Commonwealth v. Tiblerino, 81 Pa. Superior Ct. 9.

One of the most interesting and best considered cases is the opinion of Mr. Justice Hammer in the extradition proceedings against Bruno Richard Hauptmann, charged with the murder in New Jersey of Charles A. Lindbergh, Jr., handed down 4 weeks ago, a manuscript copy of which was furnished us by the learned counsel for the relator. These last cases are referred to in anticipation of the fact that the requisition papers may be presented at our next meeting. We call especial attention to what Mr. Justice Hammer said in pointing out the difference between a case where the relator is detained on an affidavit and where a certified copy of the indictment against him in the demanding State is produced at the hearing.

And now, November 1, 1934, the application to be permitted to enter bail is denied. Relator is remanded to the custody of defendant, and further hearing will be had on Wednesday, November 7, 1934.