# Herdic *versus* Bilger, for use, &c.

*Construction of contract for sale of lumber on the Susquehanna river.—*
*Binding effect of decision of arbiter impliedly chosen by parties.*

1. Where parties to a contract of sale have appointed an arbiter to measure the merchandise agreed to be sold, and have contracted that payment shall be made according to such measurement, they are bound by it. In the absence of fraud, every presumption is in favour of its accuracy; and it is error to sub-

[Herdic v. Bilger.]

mit to the jury the question of mistake or fraud, without evidence from which it could fairly be inferred.

2. Contracts for the sale of lumber on the West Branch of the Susquehanna are presumed to be made with reference to the Act of Assembly approved March 26th 1846, sec. 10, which authorizes the appointment of a scaler by the Common Pleas of Lycoming county, to measure logs rafted out of the Susquehanna Boom Company; and his measurement, in the absence of any other provision by the parties, is the rule by which the quantity sold is to be determined.

ERROR to the Common Pleas of *Lycoming county*.

This was an action of *assumpsit*, brought by David M. Bilger, for the use of W. F. Reynolds & Co., against Peter Herdic.

The plaintiff declared on a promissory note, of which the following is a copy:—

"Williamsport, April 1st 1859.

"$2000.

"Four months after date I promise to pay D. M. Bilger two thousand dollars, at the West Branch Bank, at Williamsport, without defalcation, for value received.

(Signed)　　　　　"PETER HERDIC."

Endorsed: "D. M. BILGER.

"Cr. our acc't.　W. F. REYNOLDS & Co."

To which the defendant pleaded *non assumpsit*, set-off, payment with leave; and the plaintiff replied generally that defendant did assume, had not paid, and had no set-off.

On the 6th of November 1858, Peter Herdic and David M. Bilger entered into the following agreement:—

"This agreement, made this 6th day of November, A. D. 1858, between David M. Bilger, of Ruth township, Centre county, Pennsylvania, of the one part, and Peter Herdic, of Williamsport, Lycoming county, of the other part, witnesseth as follows: The said Bilger agrees to sell and deliver to the said Herdic four million feet of merchantable white pine saw-logs, board measure, the logs to be well butted, from four to eight feet being taken off the butt-end; at least half the above logs are to be pealed, and more if practicable. They are to be cut principally sixteen feet in length. The logs are to be cut on Meshannon creek, and said Herdic is to send a man at his own expense who is to say what logs are merchantable, and to scale the logs, and on being scaled and delivered on the bank of Meshannon creek, and in the creek, they are to be considered and to be the property of said Herdic; and the said Bilger also agrees to drive the said logs into the Susquehanna boom, as early in the spring of 1859 as the stage of the water will permit; and the said Herdic agrees to pay to the said Bilger, for the said logs and driving the same, four dollars and thirty-seven and a half cents per thousand feet, board measure, in manner following, to wit: one thousand dollars in hand at the execution of this agreement, one dollar and

[Herdic *v.* Bilger.]

twenty-five cents on such quantity of said logs as shall be delivered on Meshannon creek, on the 1st day of March 1859, and the further sum of fifty cents a thousand on the 1st day of April 1859. The balance of the purchase-money of the logs shall be paid as follows : as soon as logs enough shall be rafted out of the Susquehanna boom to balance the advances made by said Herdic up to that time ; the remainder of the logs shall be paid for by said Herdic as fast as they may be rafted out of said boom and scaled. The logs shall be so scaled, and by such a rule as to make the boards one inch and one-eighth in thickness ; that is, this eighth of an inch is to be thrown in as an allowance for shrinkage.

" In witness whereof," &c.

After the logs were in the boom, viz., on the 22d of March 1859, the note in suit, and another of same date and amount, payable three months after date, were given by Herdic to Bilger, who thereupon gave the following receipt :—

" Received, Williamsport, March 22d 1859, of Peter Herdic, twenty-seven hundred and forty dollars and nine cents ; also, said Herdic to pay judgment on the Common Pleas docket of Lycoming county, in favour of Hood & Co., against me, due 15th of August next, for four hundred and thirty-eight dollars and sixty-four cents. Received also, two notes, dated April 1st 1859 ; one at three months for two thousand dollars, payable at the West Branch Bank, and the other of said notes for two thousand dollars, payable at the said bank, at four months from date, which, with the payments made heretofore, will be in full for thirty-eight hundred thousand feet, board measure, of white pine saw-logs, sold by me to said Herdic, marked D. M. B., D. M. B. & Co., P. H., and J. F. S., on the end, to be scaled and delivered to him at the Susquehanna boom, at four dollars and thirty-seven and a half cents per thousand feet, hereby guaranteeing the quantity above stated to hold out, and in case the quantity falls short, the deficiency to be deducted from the said notes."

It was admitted by plaintiff's counsel that the defendant had paid the Hood judgment mentioned in the receipt.

The defence was, that the consideration for the note had failed ; that when the logs were scaled (that is, measured) by the duly appointed scaler, there were but 2,827,558, leaving a deficiency of 972,442 feet, which, at $4.77 per thousand feet, amounted to $4259.43.

Before the logs had been started for the boom, a portion of the logs had been scaled, but the witnesses who were examined on this point, were not agreed, some of them estimating the quantity at from sixteen hundred thousand to two millions, others at about three millions.

On the trial the defendant offered to prove by one of his wit-

[Herdic *v.* Bilger.]

nesses, that Bilger was insolvent in 1859, and that the plaintiff was not and could not have been injured by anything that was said or done by him in the presence of James T. Hale, who had been examined as a witness for the plaintiff.

To this offer the plaintiff objected, and the court sustained the objection.

The defendant also requested the court to charge the jury:—

1. That the receipt of March 22d 1859, given by Bilger to Herdic, and the note upon which the suit is brought, being executed at the same time, and relating to the same transaction, are to be considered as forming part of a single agreement, and that, thus considered, their legal effect is, that in consideration that the defendant had given to the plaintiff the two notes mentioned for $2000 each, the plaintiff was bound to deliver at the Susquehanna boom three millions eight hundred thousand feet of white pine saw-logs, and that any deficiency in the delivery of the logs should be deducted from the amount of the notes at the rate of $4.37½ per thousand feet.

2. That by the agreement, the logs were to be scaled and delivered at the Susquehanna boom, and that scaling the logs (that is, ascertaining the quantity thereof) was to precede the final delivery, and that as the parties had thus fixed the place and mode of ascertaining the quantity of logs to be so delivered, the quantity ascertained by the duly authorized scaler of logs at the boom, in the absence of evidence of clear mistake or fraud, is conclusive between the parties to this suit, and that there is in this case no such clear evidence of mistake or fraud, and that therefore the jury are bound to take the statement rendered by the scaler to the Boom Company, and sworn to here as being correct, and as conclusive evidence of the quantity of logs delivered by Bilger to Herdic, at the Susquehanna boom, under the agreement in question.

3. That as the delivery of the logs was to precede the payment of the notes, the burden of proof is upon the plaintiff to show performance on his part, and for any deficiency in the quantity of the logs which the plaintiff has failed to show that he delivered, the defendant is entitled to a deduction from the note in suit, at the rate of $4.37½ per thousand feet; and if said deficiency, after allowing $2000 for the notes at three months heretofore tried, is equal to the full amount of the note in suit, the verdict of the jury should be generally for the defendant.

The court below (JORDAN, P. J.), after stating the main facts of the case, charged the jury that the receipt changed somewhat the contract or agreement of November 6th 1858, and that it was competent for them to make any change which they saw proper.

The 1st and 3d points of defendant were answered in the affirmative.

[Herdic *v.* Bilger.]

The 2d point was disposed of as follows :—

"By the agreement of November 6th 1858, Herdic was to find a man, at his own expense, who was to say what logs were merchantable, and to scale the logs, and on their being scaled and delivered on the bank of the creek, and as per agreement.

"That by the receipt of the 22d of March 1859, the logs were to be scaled and delivered to Herdic, at the Susquehanna boom, at $4.37½ per thousand feet. This scaling and delivering were both necessary to entitle Bilger to recover from Herdic, and that the place for scaling is also fixed; and although it is not stated by whom the logs were to be scaled, when brought into the boom, the officer appointed by the court for that purpose, under the act incorporating the company, would be the proper person, and in the absence of clear mistake or fraud, his scaling would be conclusive between the parties. But the court do not instruct you that there is no such clear evidence of mistake, and that therefore you are bound to take the statement rendered by the scaler as conclusive evidence of the quantity. If you are satisfied, from all the evidence in the cause, that a greater quantity of lumber was delivered in the boom than returned by the scaler, it seems to the court that it would be just, Bilger should have the benefit of it. The court have stated, you must be satisfied there was a mistake—satisfied from the evidence, that the measurement by the scaler is incorrect, to warrant you in deviating from it."

Under these instructions there was a verdict and judgment in favour of the plaintiff for $2396.66. Whereupon the defendant sued out this writ, and assigned for error—

1. The answer given by the court below to his 2d point; and

2. The rejection of the testimony relative to the insolvency of Bilger in 1859.

*John C. Knox* and *George White*, for plaintiff in error.

*William H. Armstrong, James Armstrong*, and *Henry C. Parsons*, for defendant in error.

The opinion of the court was delivered, March 21st 1864, by

STRONG, J.—The note upon which this suit was brought, was given to secure a part of the unpaid purchase-money of a quantity of white pine logs, which the plaintiff below had agreed to sell to the defendant, and to deliver to him at the Susquehanna boom. The agreement was made on the 6th day of November 1858, and by it the plaintiff bound himself to sell to the defendant four million feet of merchantable white pine saw-logs, and to drive them into the Susquehanna boom, as early in the spring of 1859 as the stage of the water would permit. By the same

[Herdic v. Bilger.]

agreement the defendant undertook to pay for the logs at the rate of $4.37½ per thousand feet, board measure, a part in hand, another part on the 1st of March 1859, and another part on the 1st of April 1859. It was agreed the remainder of the purchase-money should be paid as follows:—"As soon as logs enough should be rafted out of the Susquehanna boom to balance the advances made, the remainder should be paid for as fast as they might be rafted out of said boom and scaled" (viz., measured). The purchaser was to send a man to the region where the logs were to be gathered, to determine what logs were merchantable, and to scale them, and it was agreed, that when thus scaled and delivered on the bank of the Meshannon creek, they should be the property of the defendant, though the plaintiff was afterwards to drive them to the boom. The scaling in the woods was doubtless to be made for the purpose of transmission of the property, though payment of the full purchase-money was not to be made until the logs were rafted out of the boom and scaled there, as all logs rafted out must be under the 10th section of the Act of Assembly of March 26th 1846.  P. L. 192.

The logs were started on the drive in the spring of 1859, and on the 22d of March of that year the defendant made a payment on the contract in addition to those he had previously made, and gave his two notes, of which that in suit is one, dated April 1st 1859, payable in three and four months. The logs had not then been rafted out of the boom, and had not even arrived there. When the notes were given, the plaintiff gave to the defendant a receipt for them and the payment made, acknowledging them to be in full for thirty-eight hundred thousand feet, board measure, of white pine logs, sold by him to the defendant, " to be scaled and delivered to him at the Susquehanna boom, guaranteeing the quantity above stated to hold out, and in case the quantity falls short, the deficiency to be deducted from the said notes." It is plain that the receipt was not intended to be, and that in fact it was not, any alteration of the first contract. Taking the papers together, it is evident the quantity of lumber delivered was to be ascertained, when the logs should be rafted out of the boom and scaled there. Whether the whole or any part of the sums named in the two notes was to be paid, was to be determined by a scaling to be made at the boom, and, as the original agreement stipulated, when the logs should be rafted out. The contract was necessarily made in reference to the law, and as the Act of Assembly, already referred to, required all logs rafted out of the boom to be measured by a person appointed for the purpose by the Court of Common Pleas of Lycoming county, the measurement of that officer, in the absence of any other provision, was the agreed rule by which the quantity was to be determined. And were this not so, it is certain that, by the contract of the

11 Wr.—5

parties, a scaling or measurement *at the boom* was provided for. Until it was made *there* the plaintiff was not entitled to payment for the logs, except so far as instalments were stipulated for at the designated times. The amount due upon the two notes, if any, was made dependent upon a scaling *to be made after the notes were given*, after the logs had started on their drive from Meshannon creek, and *to be made* at the boom. But no other measurement was made after the notes were given than the one made by the appointed boom measurer. Neither of the parties made any attempt to have any other measurement made. Thus they showed their own understanding of the contract. On the trial the scaling or measurement of the boom measurer, at the boom, was given in evidence, and it appeared from it that there was a deficiency of nearly a million feet in the quantity scaled and delivered. If this measurement was correct, the consideration for the note in suit had entirely failed. The plaintiff had therefore no case, unless he could show either fraud or mistake in this measurement. Fraud was not pretended, nor was there the slightest evidence of it, but an attempt was made to show mistake. Of course nothing less than clear evidence of mistake would answer. When parties have appointed an arbiter to measure the quantity of merchandise agreed to be sold, and have contracted that payment shall be made according to such measurement, they are bound by it. In the absence of fraud, every presumption is in favour of its accuracy. It is not to be set aside by any evidence that is not plainly inconsistent with its accuracy, for it has been made the evidence, the exclusive evidence, by the agreement of reference. The court below recognised this reasonable rule, and instructed the jury, that the quantity of logs as ascertained by the duly authorized scaler at the boom, was conclusive upon the parties to this suit in the absence of evidence of clear mistake or fraud; but they should have gone further. On the evidence given, it should not have been submitted to the jury to find a mistake in the measurement. There was no direct evidence of mistake, and nothing from which it could clearly be inferred. No other measurement was made at the boom where the logs were to be delivered and measured. None was made elsewhere. On Meshannon creek many miles above the boom, a portion of the plaintiff's logs had been scaled before the drive started, and before the logs were in the water, but not more than from sixteen hundred thousand to two millions of feet. It is true some witnesses estimated the quantity of logs there to contain three million eight hundred thousand feet, but they made no measurement. They judged from the representations of others, and from the general appearance of the logs. Their estimate is not to be weighed against an actual measurement, made at an appointed place, and by an appointed scaler.

[Herdic v. Bilger.]

It was for the purpose of excluding such evidence of quantity, that the parties fixed a mode of determination. To admit it now as evidence, of the quantity of logs actually measured and delivered, would be to authorize a change of the contract. Mistake is not to be shown by conjecture. We think, therefore, the court erred in not affirming the whole of the defendant's proposition, and charging the jury that there was no evidence of clear mistake or fraud in the measurement made by the scaler at the boom.

The second assignment of error is not sustained. The offer of the defendant to show the insolvency of Bilger, rejected by the court, was made in misapprehension of the purpose for which Judge Hale's deposition had been given in evidence. That had been admitted to show an implied concession by the defendant that the stipulated quantity of logs had been delivered. Of that it was indeed very slight evidence. But the question, whether the party to whose use the suit was brought had been injured by what took place between Judge Hale and the defendant, was quite irrelevant to any matter in controversy on the trial.

Judgment reversed, and a *venire de novo* awarded.

WOODWARD, C. J., was at Nisi Prius, when this case was argued.