Alvin H. FRANKEL, Administrator ad Prosequendum of the Estate of Lynn E. Hoyt, Deceased,

v.

JOHNS–MANVILLE CORPORATION, Turner Construction Company.

The BELMONT IRON WORKS (Third Party Defendant), Appellant,

v.

RALPH CORNELL, INC.

No. 12441.

United States Court of Appeals Third Circuit.

Argued May 9, 1958.

Decided July 16, 1958.

Rehearing Denied Aug. 11, 1958.

See also, 134 F.Supp. 108.

Thomas Raeburn White, Jr., Philadelphia, Pa. (Thomas Raeburn White, White, Williams & Scott, Philadelphia, Pa., on the brief), for appellant.

Walter B. Gibbons, Philadelphia, Pa., for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from the District Court for the Eastern District of Pennsylvania upon a judgment for the claimant in a suit on a contract of indemnity.[1] The history of the case is this. Alvin H. Frankel, as administrator of the estate of Lynn E. Hoyt, got a judgment in a suit against the Johns-Manville Corpo-

---

1. We are calling Turner Construction Company claimant in a non-technical sense as will be seen. The original plaintiff and defendants as they were joined brought in others so that defendants of record really numbered a group of four.

ration and Turner Construction Company to recover for damages occasioned by Hoyt's death. The judgment against Turner has been paid so that Frankel is out of the case. See Frankel v. Johns-Manville Corp. (Turner Construction Co.) 3 Cir., 1955, 224 F.2d 279.

At the present stage of the litigation Turner seeks to recover what it paid on this judgment from Belmont Iron Works. The hierarchy of building concerns involved may be briefly stated although its members may be hard to keep in mind. Turner was a general contractor for a building to be constructed at Manville, New Jersey. Turner contracted the furnishing and erecting of the structural steel to Belmont, and Belmont in turn subcontracted the erection job to Ralph Cornell, Inc. Still another company, Atlas Roofing Company, was engaged to make a flat roof on top of the main building which Manville had ordered. The decedent fell through this unfinished roof while working for Cornell and, as already said, Turner has been held responsible.

Now the question comes up whether Turner, already found liable for the negligence which resulted in Hoyt's death, can compel Belmont to indemnify Turner for the cost of the Hoyt litigation and the damages paid. Belmont, so far as its tort liability is concerned, won in the trial court. The present question turns on the obligation imposed by Article XV of the Turner-Belmont contract. The language is as follows:

"The Subcontractor hereby assumes entire responsibility and liability in and for any and all damage or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, growing out of or resulting from the execution of the work provided for in this Contract or occurring in connection therewith, and agrees to indemnify and save harmless, Turner, its agents, servants and employees from and against any and all loss, expense, including attorney's fees, damages or injury growing out of or resulting from or occurring in connection with the execution of the work herein provided for * * *."

■ Our first problem is to find the law which governs the effect of this agreement. The case is in federal court by diversity only. Ever since Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, was decided it is clear that we take our conflict of laws rule from the law of the state in which the court sits. So, here, we must find the Pennsylvania rule applicable to this set of facts.

■ Turner from New York sent an unexecuted contract form to Belmont in Philadelphia. Belmont signed the document and sent it to Turner in New York. Turner in New York put its signature on the paper and mailed a copy, now signed by both parties, to Belmont in Philadelphia.

We do not have any difficulty here in finding that New York was the "place of contracting." The last act to bring the agreement into legal effect was there performed with the mailing of the signed document to Belmont. Pennsylvania law is quite clear on this point. We discussed this in McLouth Steel Corp. v. Mesta Machine Co., 3 Cir., 1954, 214 F.2d 608, and need not repeat here. See also Restatement, Conflict of Laws § 326, comment a (1934).

■ But having found that New York is the place of making the contract it does not necessarily follow that New York law is the controlling law all the way through. This agreement called for Belmont to "furnish, deliver and erect" the structural iron work for the building being built in New Jersey. So we have Belmont's performance to take place partly in Pennsylvania and for the remainder in New Jersey so far as the matters having to do with the construction of the building are concerned. However, the part of the contract with which we are dealing in this case has nothing to do with the buildings which Manville wanted erected in Manville,

New Jersey. The question here is Belmont's liability to pay Turner indemnity. If there is such liability it is to pay Turner in New York which is its principal place of business. So we have a contract executed in New York and we have an agreement wherein, if the debtor is liable to pay at all, his place of payment is in New York. This throws both making and performance into the same state. And under those circumstances the conflict of laws rule in Pennsylvania is that the law of making-performance controls. See Benners v. Clemens, 1868, 58 Pa. 24; cf. York Metal & Alloys Co. v. Cyclops Steel Co., 1924, 280 Pa. 585, 124 A. 752; Robert H. Fox Co. v. Keystone Driller Co., 3 Cir., 1956, 232 F.2d 831; Field v. Descalzi, 1923, 276 Pa. 230, 120 A. 113; Campbell Soup Co. v. Wentz, 3 Cir., 1948, 172 F.2d 80.

■ It has been argued to us that the choice of law is unimportant for the law of New York, Pennsylvania and New Jersey is the same. We find that to be true for the general proposition that a party can make an indemnity contract to protect himself from negligence for which he may be held responsible if the intention is expressed clearly enough. This is also the general rule. Annotation, 1948, 175 A.L.R. 8, 20, 29, 144. But this does not advance us very far to the solution of our immediate problem. The question is whether the language set out above calling for indemnity is sufficiently clear to allow Turner to recover indemnity against Belmont in this case.

This is not a situation where we can independently assess the meaning of the words used; this is more than a question of interpretation. If the law applicable to this contract has settled an effect to be given to these or similar words, such effect should be determined by that law, here New York. In other words, the outcome of this particular claim, whether in favor of Turner or Belmont, depends upon our conclusion after analysis of the New York decisions dealing with the point.

■ The conclusion we have reached is that under New York law the words used here are insufficient to give Turner a right of indemnity against Belmont under the circumstances of this case. The most helpful New York case is Thompson-Starrett Co. v. Otis Elevator Co., 1936, 271 N.Y. 36, 2 N.E.2d 35, 36. The general contractor there, as here, was negligent; the subcontractor there, as here, was not. In denying recovery on an indemnity portion of the contract between the parties the court pointed out the necessity of unequivocal language if one is to be indemnified against his own negligence. The court also pointed out [2] that "The primary purpose of the contract was to provide for elevator construction work by the appellant as subcontractor, and the indemnity agreement was an incident of the contract intended to afford to the respondent protection against such claims for damages as might grow out of damages to persons resulting from the prosecution of that part of the work embraced in the general contract to be undertaken by appellant as subcontractor." This case, we think, is almost as definitely in point as one could be.

Cases concerned with the application of the New York labor law support this result although the problem is complicated by the policy question involved in that statute. See, e. g., Semanchuck v. Fifth Ave. & Thirty-Seventh St. Corp., 1943, 290 N.Y. 412, 49 N.E.2d 507. These cases are to be contrasted with those where the claims arose out of the very activities which the indemnitor undertook to perform and provide indemnity for. See, e. g., Salamy v. New York Central System, 3 Dep't 1955, 1 A.D.2d 27, 146 N.Y.S.2d 814. Cf. Turner Const. Co. v. Rockwood Sprinkler Co., 1 Dep't 1937, 249 App.Div. 508, 509, 293 N.Y.S. 551.

2. This is not uncommon practice in determining the effect of this kind of an agreement. See Potamkin & Plotka, Indemnification Against Tort Liability, 92 U. Pa.L.Rev. 347, 351 (1944).

The learned trial judge did not have the benefit of all these cases. We think they point to the conclusion that the indemnity paragraph does not give Turner the right to indemnity against Belmont under these facts.

The judgment of the district court will be reversed.