Linn, Appellant, *v.* Employers Reinsurance Corporation.

Argued November 20, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*C. Russell Phillips,* with him *George Francis Blewett* and *Montgomery, McCracken, Walker & Rhoads,* for appellants.

*George E. Beechwood,* with him *Miles Warner* and *Beechwood, Lovitt & Murphy,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 17, 1958:

Plaintiff insurance brokers brought this action in law to require the defendant insurance company to account and pay to them commissions on insurance premiums received since 1953 from a New Jersey company. At the close of plaintiffs' evidence, the trial judge entered a nonsuit which the court *en banc* refused to remove, and this appeal followed.

From the undisputed evidence it appears that in 1926 the plaintiffs were engaged in the insurance brokerage business in Philadelphia.[1] In that year plaintiffs offered to place with the defendant contracts for the reinsurance of certain risks undertaken by the Selected Risks Insurance Company of New Jersey for a consideration of five per cent of all premiums collected by the defendant on such policies. Plaintiff

---

[1] Plaintiffs conducted their business as a Pennsylvania corporation in which they were the sole shareholders. In 1938 they dissolved their corporation and continued as partners in the business in which capacity they brought this action.

Linn went to New York City to negotiate an agree-
ment with one William Ehmann, an agent of the de-
fendant. Ehmann stated that he would first have to
obtain authority to accept the offer from the defendant's
home office in Kansas City. He promised that he would
communicate with the plaintiff "as soon as he could
get word from Kansas City." Linn then returned to
Philadelphia, and subsequently received a telephone
call from Ehmann accepting the offer.

The defendant entered into the required treaty with
the New Jersey company which, as modified and re-
newed, continues in effect. From 1926 until 1953 the
defendant paid the plaintiffs the agreed upon commis-
sions. But in 1953, the defendant notified the plaintiffs
that it did not consider itself obligated further under
the contract and that it would discontinue accounting
to the plaintiffs for the premiums received from the
New Jersey company.

On this evidence the trial judge found that the con-
tract was made in New York, and applying the New
York Statute of Frauds,[2] held that the agreement was
unenforcible thereunder because it was not to be per-
formed within one year from the date it was entered
into. Wherefore, the court concluded that the defend-
ant was under no duty to account.

We recognize that the formal validity of a contract
is determined by the law of the state in which the
contract was made. *Bernstein v. Lipper Mfg. Co.,* 307

[2] "Every agreement, promise or undertaking is void, unless it
or some note or memorandum thereof be in writing, and sub-
scribed by the party to be charged therewith, or by his lawful
agent, if such agreement, promise, or undertaking, (1) by its
terms is not to be performed within one year from the making
thereof. . . ." McKinney's Consolidated Laws of New York, Annotat-
ed Laws of 1909, Ch. 45, Art. 3, New York Personal Property Law,
§31(1).

Pa. 36, 43, 160 Atl. 770 (1932); *Callaway v. Prettyman*, 218 Pa. 293, 67 Atl. 418 (1907). Since the provisions of the Statute of Frauds relate to formal validity, it is to the statute of the place of contracting that we must refer.[3] It is therefore necessary for us to determine in which state the contract was made.

When a principal authorizes an agent to accept an offer made by a third party, as the defendant authorized Ehmann in the present case, the place of contracting is where the agent accepts the offer. *Rodman v. Thalheimer*, 75 Pa. 232, 238 (1874); Restatement, Conflict of Laws §330 (1934); 2 Beale, Conflict of Laws §§325.1, 328.1 (1935). In the case of acceptance by mail or telegraph, the act of acceptance is held to be effective where the acceptance was posted, *Ward Lumber Co. v. American Lumber & Mfg. Co.*, 247 Pa. 267, 93 Atl. 470 (1915), or received by the telegraph company for transmission. *Field v. Descalzi*, 276 Pa. 230, 120 Atl. 113 (1923). See I Williston, Contracts §§81, 82, 97 (3rd ed. Jaeger 1957).

This Court has not heretofore been required to determine the place where an acceptance spoken over the telephone is effective.

Professor Williston and the Restatement of Contracts take the position that a contract made over the telephone is no different from a contract made where the parties orally address one another in each other's presence. In the latter case the offeror does not have the risk of hearing an acceptance addressed to him, and a contract is formed only if the acceptance is heard.

---

[3] The rules embodied in the Pennsylvania Statute of Frauds are matters of substance not procedure, and apply only to contracts made in Pennsylvania. *Bernstein v. Lipper Mfg. Co.*, 307 Pa. 36, 160 Atl. 770 (1932); Goodrich, Conflict of Laws §88 (3rd ed. 1949); Lorenzen, The Statute of Frauds and the Conflict of Laws, 32 Yale L.J. 311 (1923).

Consequently, the place of contracting is where the acceptance is heard and not where the acceptance is spoken. 1 Williston, op. cit. supra, §82A; Restatement, Contracts, §65 (1932). While we agree that this analysis represents a sound theoretical view, the reported cases which consider this issue are uniform in holding that by analogy to the situations in which acceptance is mailed or telegraphed, an acceptance by telephone is effective, and a contract is created at the place where the acceptor speaks. See *Trinity Universal Ins. Co. v. Mills,* 293 Ky. 463, 169 S.W. 2nd 311, 314 (1943); *United States v. Bushwick Mills,* 165 F. 2d 198, 202 (2nd cir. 1947); *Cardon v. Hampton,* 21 Ala. App. 438, 109 So. 176, 177 (1926); *Bank of Yolo v. Sperry Flour Co.,* 141 Cal. 314, 74 Pac. 855 (1903); *Ward Mfg. Co. v. Miley,* 131 Cal. App. 2d 603, 281 P. 2d 343, 348 (1955); *Pearson v. Electric Service Co.,* 166 Kan. 300, 201 P. 2d 643, 644 (1949); *Dudley A. Tyng & Co. v. Converse,* 180 Mich. 195, 146 N.W. 629, 630-631 (1914); *Traders Oil Mill Co. v. Arnold Bros. Gin Co.,* 225 S.W. 2nd 1011 (Tex. Civ. App. 1949). See also 2 Beale, op. cit. supra, §326.2; Restatement, Conflict of Laws, supra, §326, comment c. In fact, where the federal courts are charged with the duty of applying Pennsylvania law they have reached this conclusion. See *Rothenberg v. Rothstein & Sons,* 181 F. 2d 345, 346 (3rd cir. 1950); *Macias v. Klein,* 106 F. Supp. 107, 109 n. 5 (D.C. W.D. Pa. 1952).

We believe that in this day of multistate commercial transactions it is particularly desirable that the determination of the place of contracting be the same regardless of the state in which suit is brought. The absence of uniformity makes the rights and liabilities of parties to a contract dependent upon the choice of the state in which suit is instituted and thus encourages "forum-shopping." For this reason we chose to follow

the established pattern of decisions and hold that acceptance by telephone of an offer takes place where the words are spoken.

Applying this principle to the facts before us, we conclude that the state where the contract was made is the state from which Ehmann telephoned the defendant's acceptance to Linn. However, contrary to the trial court's determination, there is no evidence in the record to indicate from which state Ehmann spoke. It is likely that he telephoned from his New York office, but it is also possible that he called from Kansas City or even Philadelphia; we cannot substitute speculation for evidence. The record of this case, therefore, must be remitted to the court below for determination of this question.

Judgment reversed and record remanded for further proceedings in accordance with this opinion. Costs to abide the event.