Commonwealth *v.* Taub, Appellant.

Argued November 18, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Jerome B. Lieber,* with him *S. Leo Ruslander, Daniel J. Snyder, Jr.,* and *Ruslander, Ruslander & Lieber,* for appellant.

*John K. Best,* First Assistant District Attorney, and *Earl S. Keim,* District Attorney, submitted a brief for appellee.

OPINION BY RHODES, P. J., September 11, 1958:

This is an appeal by defendant in a surety of the peace proceeding heard in the Court of Quarter Sessions of Westmoreland County. Defendant was adjudged guilty.

The prosecution was under the Act of March 31, 1860, P. L. 427, §6, 19 PS §23, which provides: "If any person shall threaten the person of another to wound, kill or destroy him, or do him any harm in person or estate, and the person threatened shall appear before a justice of the peace, and attest, on oath or affirmation, that he believes that by such threatening he is in danger of being hurt in body or estate, such person so threatening as aforesaid shall be bound over, with one sufficient surety, to appear at the next sessions, according to law, and in the meantime to be of his good behavior, and keep the peace towards all citizens of this commonwealth. . . ."[1]

The present prosecution was instituted on information before a justice of the peace of Westmoreland County by J. H. Millstein, and defendant was arrested

---

[1] The present statutory proceeding is distinct from the practice of requiring a defendant, acquitted of a criminal charge, to give bond to keep the peace, which was held invalid in *Com. v. Franklin,* 172 Pa. Superior Ct. 152, 153, 92 A. 2d 272.

in Pittsburgh, Allegheny County. He was charged with threatening to take the life of J. H. Millstein and putting the latter in fear. The threats were made by defendant over the long distance telephone from Pittsburgh to Millstein, at Jeannette, Westmoreland County, on June 27, 1957. A preliminary hearing was held before the justice of the peace in Westmoreland County, and defendant was held for the Court of Quarter Sessions of Westmoreland County.

At the hearing in the court below defendant questioned the jurisdiction of the court, alleging that if any offense had been committed it was not committed in Westmoreland County but in the County of Allegheny. His motions to dismiss for want of an indictment and for the refusal of a jury trial were also overruled.

The court below, after hearing, adjudged defendant guilty and directed that he pay the costs of prosecution and enter bond in the sum of $25,000 to keep the peace towards all mankind and especially towards J. H. Millstein. Pending disposition of the appeal this Court reduced the bond to $2,000.

Neither the sufficiency of the threats nor the procedure before the justice of the peace is questioned on this appeal.

However, defendant contends that the action of the court below must be reversed, and reiterates the reasons: (1) He was not indicted by a grand jury; (2) he was not afforded a jury trial; and (3) the Court of Quarter Sessions of Westmoreland County did not have jurisdiction.

We find no merit in the argument that an indictment by a grand jury was a prerequisite and essential to due process. The offense of surety of the peace has never been an indictable offense. The purpose of the statutory enactments has been to prevent the commis-

sion of a more serious crime. To accomplish this objective, time is of the essence in processing the action, The Act of March 31, 1860, P. L. 427, §32, 17 PS §361, relating to the jurisdiction of courts of quarter sessions contains the following provision: "IV. To continue, or discharge the recognizance and obligations of persons bound to keep the peace, or to be of good behavior, taken as aforesaid, or certified into such court by any justice of the peace of such county, and to inquire of, hear and determine, in the manner hitherto practiced and allowed, all complaints which shall be found thereon."

The Act of April 27, 1909, P. L. 260, §1, 19 PS §27, prescribes the expeditious procedure to be followed: "Where a magistrate, alderman, or justice of the peace hearing any surety of the peace or desertion case shall determine to return the same to the court of quarter sessions, such return, instead of being made to the next court of quarter sessions, shall be filed immediately with the clerk of said court; and the judge or judges of the said court of quarter sessions may, whenever the said court is in session, and it is convenient, dispose of the said complaint."

The Act of March 18, 1909, P. L. 42, §§1-3, 19 PS §§24-26, relates to the hearing to be held by a justice of the peace before whom such case is instituted and the findings required prior to returning the case to the court of quarter sessions.

It is obvious that the court of quarter sessions, upon the return by a justice of the peace in surety of the peace cases, may proceed on the complaint without an indictment and make disposition without a trial by jury. The Acts quoted empower a judge of the court of quarter sessions to hear, determine, and dispose of such complaints. See *Com. v. Cano,* 182 Pa. Superior Ct. 524, 128 A. 2d 358, affirmed 389 Pa. 639,

133 A. 2d 800, relative to indictable offenses and procedure by information.

There was no violation of article I, §6 of the Constitution of Pennsylvania which provides that "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Defendant was not charged with an offense that was indictable or triable by jury at common law; the offense is defined by statute, and the procedure is prescribed. See *Com. v. Wesley,* 171 Pa. Superior Ct. 566, 572, 91 A. 2d 298. See, also, *Herz v. Hamilton,* 198 Iowa 154, 197 N. W. 53; *Ex parte Way,* 56 Cal. App. 2d 814, 133 P. 2d 637.

We are of the opinion that the court below had jurisdiction of this statutory offense. The obvious elements are: (1) The making of the threat (2) to a person and (3) putting him in fear or danger of being hurt. Ordinarily the offense is committed in the actual presence of the victim. But it is possible, as the court below found, that the victim may be threatened and put in fear by a defendant speaking over the telephone from miles away. See *Com. v. Cushard,* 184 Pa. Superior Ct. 193, 132 A. 2d 366, which so holds. In such a situation the offense is completed when, after the threat is made by defendant, it is communicated to the victim who is thereby put in fear. It follows that the offense is completed at the place where the victim hears the threat and is put in fear, and jurisdiction rests where the offense is thus committed. If the offense is not completed until the victim is put in fear, then it is committed at the place where he is put in fear. The mere making of the threat does not necessarily constitute the offense. For example, if defendant in the present case made the threats into the telephone after he had been inadvertently and unknowingly cut off, the offense could not then be said to have been committed. When defend-

ant spoke the threats in Allegheny County into the telephone he chose this mechanical means to communicate the threats to the victim in Westmoreland County. It was in the latter jurisdiction that the threats were communicated to and heard by the victim; being thus put in fear, the offense was thereby completed. Defendant set the threat in motion and he followed it to the place where it resulted in the commission of the offense.

The situation is analogous to the making of an offer for a contract. The offer must be communicated to the offeree before it may be effective and accepted; the mere making of the offer is not effective. See *Linn v. Employers Reinsurance Corporation*, 392 Pa. 58, 139 A. 2d 638. The case of *United States v. Thayer*, 209 U. S. 39, 28 S. Ct. 426, 52 L. Ed. 673, is illustrative. There defendant was indicted under a statute which made it a crime to solicit a contribution for political purposes from a United States employe in a post office building. Defendant, who never was in the building, mailed letters of solicitation to employes at the post office where the letters were delivered and read. The issue was whether the solicitation took place in the post office building. The United States Supreme Court held that it did, saying (page 43 of 209 U.S., page 675 of 52 L. Ed.): "The solicitation was made at some time, somewhere. The time determines the place. It was not complete when the letter was dropped into the post. If the letter had miscarried or had been burned, the defendant would not have accomplished a solicitation. The court below was misled by cases in which, upon an indictment for obtaining money by false pretenses, the crime was held to have been committed at the place where drafts were put into the post by the defrauded person. Com. v. Wood, 142 Mass. 459, 462, 8 N. E. 432; Reg. v. Jones, 4 Cox,

C.C. 198. But these stand on the analogy of the acceptance by mail of an offer, and throw no light. A relation already existed between the parties, and it is because of that relation that posting the letter made the transaction complete. . . . Here a relation was to be established, just as there is at the first stage of a contract when an offer is to be made. Whether or not . . . nothing less than bringing the offer to the actual consciousness of the person addressed would do . . . certainly putting a letter into a postoffice is neither an offer nor a solicitation. 'An offer is nothing until it is communicated to the party to whom it is made.' Thomson v. James, 9 Sc. Sess. Cas. 2d series, 1, 10, 15. Therefore, we repeat, until after the letter had entered the building, the offense was not complete; but, when it had been read, the case was not affected by the nature of the intended means by which it was put into the hands of the person addressed."

The bond heretofore entered by defendant in the sum of $2,000 shall remain in effect for a period of one year from the date hereof. As so modified, the order and the sentence of the court below are affirmed.

---

DISSENTING OPINION BY GUNTHER, J.:

I find it necessary to dissent from the majority opinion for reasons I consider fundamental in the administration of our criminal laws. In the long history of our Commonwealth, only twice have we considered surety of the peace cases, and this is the first time we have been called upon to rule on the venue question. The rule enunciated by the majority only tends to confuse and make uncertain what has been considered generally as the well defined guide posts on venue.

As aptly stated by Judge WATKINS in his dissent, "When the defendant questioned the jurisdiction of the court, venue became a distinct issue of fact and the burden was on the Commonwealth of proving venue." An examination of this record reveals that nowhere has the Commonwealth established venue in Westmoreland County. The majority of this Court overlooks this fundamental prerequisite. Nowhere in this record is it shown that the defendant committed an overt act in Westmoreland County! This vacuum is displaced by showing that the alleged victim *received the threat* in Westmoreland County.

For the refutation of this venue fallacy, it is only necessary to refer to the original legislative enactment on this subject, the Act of 1700, 1 Smith Laws 5:

"That whosoever shall threaten the person of another, to wound, kill or destroy him, or do him any harm in person or estate . . .; such person so threatening as aforesaid shall be bound over, with one sufficient surety, to appear at the next Session or County Court, *to be holden for the county where such offense was committed, to be proceeded against according to law; . . .*" (emphasis supplied).

What is the offense? The legislature very plainly spelled it out as the making of a threat. The overt act (required in all criminal prosecutions) is the threat and not the receipt thereof. The overt act in this case was made in Allegheny County and not in Westmoreland County. From a historical point of view, it is very evident that venue was placed in the geographical location where the threat was made or committed. The invention of the telephone whereby a threat may be transmitted beyond the limited distance of ordinary hearing did not change venue. The means of communication—whether by voice, mail or modern mechanical devices—did not and could not change the overt

act or the place where such took place. If the majority view be sound, logic concludes that the offense cannot be prosecuted in Allegheny County because it is not complete, but logic also precludes prosecution in Westmoreland County for the same reason and for the additional reason that the accused has committed no overt act in the latter county.

It is a general common-law rule that crimes are cognizable and punishable only within the jurisdiction where they have been committed. *Simmons v. Commonwealth,* 5 Binney 617; *Commonwealth v. Kunzmann,* 41 Pa. 429; *Commonwealth ex rel. Riley v. Hudock,* 37 Pa. Superior Ct. 176, 178; *McCoy v. Kalbach,* 51 Pa. Superior Ct. 364, 375. While there are legislative instances where this common-law rule has been modified, surety of the peace has never been used as an exception to the well established principle of venue. Both the historical concept and the legislative intent clearly substantiate the proposition that if any crime has been committed (this being plainly a misdemeanor), it was committed in Allegheny County. At best, surety of the peace is an attempt to commit some crime which is restrained by law before the threatened act is put into execution. As such, this Court has ruled that the attempt is prosecuted in the county where made. *Commonwealth v. Neubauer,* 142 Pa. Superior Ct. 528, 16 A. 2d 450.

Venue may not be likened to homogenized milk which can be stirred up sufficiently as to be unable to separate the cream from the milk. The *overt act* required in every criminal act in the determination of venue cannot be confused or commingled with *a result,* as here, which gives rise to a cause of action. I cannot accede to any legal homogenization process, regardless of the legal skills employed, which attempts to confuse or makes uncertain the question of venue.

While it may be said that venue is a technical device, it is, nevertheless, a legal principle recognized, sanctioned and employed from the earliest common law to date by the accused in order to insure a trial or hearing in his own back yard. This is his right!

Neither can I accept, even by analogy, the contract theory advanced by the majority. The contractual principles of offer and acceptance shed no light in the determination of venue, in this case. Such analogy invites complications which are neither necessary nor controlling. The principles of criminal law seldom turn on the question of offer and acceptance of contractual obligations. Nor do I consider the case of *United States v. Thayer*, 209 U. S. 39, 28 S. Ct. 426, 52 L. Ed. 673, as controlling even by way of illustration. The conviction in that case turned on the question of whether defendant's physical presence in a government building was necessary in order to be guilty of soliciting government employees for contributions rather than on the question of whether an overt act was there committed. The case turned on the question of solicitation "in any manner whatever" under federal law and the use of the mails therefor rather than on the question raised here.

Without even considering the question of whether a jury trial should have been granted when requested, and which is not free from doubt, I would reverse the order and the sentence of the court below.

---

DISSENTING OPINION BY WATKINS, J.:

I cannot agree with the majority that the court below had jurisdiction and would reverse.

It is a general common law rule that crimes are cognizable and punishable only within the jurisdiction

where they have been committed. The locus of a crime is always at issue, for a court has no jurisdiction of the offense unless committed in the county where tried. *Com. v. Mull*, 316 Pa. 424, 175 A. 418 (1934). When the defendant questioned the jurisdiction of the court, venue became a distinct issue of fact and the burden was on the Commonwealth of proving venue. *Com. v. Wojdakowski*, 161 Pa. Superior Ct. 250, 53 A. 2d 851 (1947); *Com. ex rel. Koffel v. Myers*, 184 Pa. Superior Ct. 270, 275, 133 A. 2d 570 (1957).

Here, there is no question about the facts in issue. The defendant made the alleged threats in Allegheny County, by telephone, to the prosecutor in Westmoreland County, so that the only way the venue could have been said to be in Westmoreland County was a determination that the crime was committed where the threat was received. This we believe to be untenable, and the argument of the defendant that the threat by telephone could have been made by a person residing in California or England and to compel such a person to stand trial for the charge, certainly approaches reductio ad absurdum.

The offense of surety of the peace has only one element and that is the overt act of making the threat. Making a threat always requires some means of delivering the threat to the one threatened, whether verbally, in writing, by telephone, by mail or other means of transmission. The offense does not require anything other than the making of the threat and is complete upon proof that the one threatened was reasonably put in fear of being hurt in body or estate.

A threat is defined as "A declaration of intention or determination to inflict punishment, loss or pain on another, or to injure another by the commission of some unlawful act." Black's Law Dictionary, page 1651. The nature of the offense of surety of the peace

is quasi criminal. In a criminal case you seek punishment for a crime committed while in surety cases you seek to prevent the commission of a crime. Once the threat to commit the crime of assault and battery was made by the telephone call to the threatened party, the overt act was completed and the action of the aggrieved party is taken to prevent the commission of the crime threatened.

The standard required under which the act shall operate to determine "putting in fear", provides that the complaining party's danger of being hurt in body or estate be actual and that the threats made be malicious with intent to do harm. *Com. v. Cushard,* 184 Pa. Superior Ct. 193, 132 A. 2d 366 (1957). This all takes place at the hearing but the threat is the gist of the offense and the foundation of the action. Proof under the act is required that the one threatened be reasonably put in fear of being hurt in body or estate. It is, however, the threat emanating from Pittsburgh that triggers the emotional result of the threat. It seems to follow too, that the farther away the threat originates, the less likelihood there is of the recipient being reasonably put in fear. The place where it is made is the locus of the crime.

This is the reasonable interpretation of the act and the intention of the legislature to follow the general common law rule is indicated in the original Act 1700, 1 Smiths Laws 5, which provided that the defendant was bound "to appear at the next Session of County Court, to be holden for the county where such offense was committed."

The analogy of an offer and acceptance of a contract does not apply here. Certainly a contract is not complete until a meeting of the minds is evidenced by an acceptance, but the fact that a contract does not result because of nonacceptance does not eliminate the

fact that an offer actually was made. In the case of surety of the peace the offer in the form of a threat to commit a crime is the crux of the offense.

The offense, originally and in most cases today contemplated a threat made by one person to another in the same locality, so there was no question of long distance threats where venue became an issue. Distance by its very nature, between the parties, may of itself raise a serious doubt as to the reasonableness of being put in fear.

In the business world of today where most negotiations are carried out by mail and telephone, heated language is the ordinary, everyday occurrence. In most instances, however, although the language may be threatening, there is no malicious intent to carry out its purport and the recipient is certainly not reasonably put in fear.

Yet, the reasoning of the majority invites a disappointed competitor or a disgruntled customer, not for the purpose of preventing the commission of a crime but out of sheer spite or revenge, to cause expense, inconvenience and public embarrassment by bringing a party across the State to answer a criminal charge before a friendly local Justice of the Peace.

The common sense approach to the problem, as advocated by this opinion, is well illustrated by Federal Statutes dealing with similar problems. The Federal Statutes in question involve interstate communications containing threats to kidnap or injure another person for the purpose of extortion, 18 U.S.C.A. 875 and mailing threatening communications with intent to extort, 18 U.S.C.A. 876. The statute further provides that any defendant indicted under these statutes "be entitled as of right to be tried in the district in which the matter mailed or otherwise transmitted was first

set in motion, in the mails, or in commerce between the States." 18 U.S.C.A. 3239.

Venue should be certain or made certain, wherever possible, in all legal proceedings, either criminal or civil in nature. Both the historical concept and the legislative intent substantiate the proposition that the offense was committed in Allegheny County and the court below was without jurisdiction.