## Commonwealth, Appellant, *v.* Miller.

36

Argued March 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los* and *J. Kent Culley,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellant.

No oral argument was made nor brief submitted for appellee.

Opinion by Mr. Chief Justice Jones, May 23, 1973:

On September 8, 1970, appellee returned home from work in an intoxicated state. After arguing with his wife, the prosecutrix, he loaded his gun and threatened to take his own life. When prosecutrix went to the telephone to obtain help, appellee brandished his gun and assured prosecutrix that if she dialed the telephone, it would be her last telephone conversation. Appellee thereafter left the home of his wife and children, but returned on several occasions in the same intoxicated and threatening condition.

On November 10, 1970, after a hearing before a Justice of the Peace, appellee was ordered to enter an appearance bond and was held for the Allegheny County Common Pleas Court, Criminal Division. A hearing commenced on December 16, 1970, on appellee's charged violation of the Surety of Peace Statute.[1] On April 20, 1971, appellee was ordered by the court to pay prosecution costs, to enter a bond with surety in the sum of $1,000 and to keep the peace for one year. On May 6, 1971, the Court of Common Pleas dismissed the order of April 20, 1971, requiring appellee to post bond.

The question presented by this appeal is whether the Surety of Peace Act of March 31, 1860, P. L. 427, *as amended* by the Acts of March 18, 1909, and April 27, 1909, P. L. 42 and P.L. 260, 19 P.S. §23-28, is violative of Article I, Sections 6 and 9, of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the United States Constitution as a deprivation of appellee's right to a trial by jury and the denial of due process and equal protection of the law. The order and opinion of the court below answered each inquiry in the affirmative. Appeal was taken by the Commonwealth to this Court.

---

[1] Act of March 31, 1860, P. L. 427, 19 P.S. §23.

Right to Trial by Jury

The elements of the statutory offense of surety of the peace are (1) the making of a threat (2) to some person or his property (3) with the result that the threatened person is put in fear or danger of being injured.[2]

The Act provides preventive justice and requires persons of whom there is probable cause to suspect future violent behavior to give full assurance to the public against the anticipated offenses. Offenders must post a surety bond and pay costs and, in default of payment, the justice may commit the person defaulting to the county jail until such time as costs are paid.[3]

The question whether the Act is violative of appellee's right to trial by jury and purported right to prosecution by indictment has never been decided by this Court. The procedure here employed, however, has been upheld by the Superior Court. *Commonwealth v. Taub,* 187 Pa. Superior Ct. 440, 144 A. 2d 628 (1958); *Commonwealth v. Cushard,* 184 Pa. Superior Ct. 193, 132 A. 2d 366 (1957). The Superior Court in *Commonwealth v. Taub* reasoned that the offense of surety of the peace has never been an indictable offense since the purpose of the statutory enactment is the prevention of the commission of a serious threatened crime. As crime prevention is the gravamen of these provisions,

---

[2] "If any person shall threaten the person of another to wound, kill or destroy him, or do him any harm in person or estate, and the person threatened shall appear before a justice of the peace, and attest, on oath or affirmation, that he believes that by such threatening he is in danger of being hurt in body or estate, such person so threatening as aforesaid shall be bound over, with one sufficient surety, to appear at the next sessions, according to law, and in the meantime to be of his good behavior, and keep the peace towards all citizens of this commonwealth. . . ." Act of 1860, P. L. 427, 19, §23.

[3] Act of 1909, P. L. 42, 19 P.S. §25.

rather than prosecution of a crime already committed, time is of the essence in processing the action. Prosecution via time-consuming indictment is neither required by Article I, Section 9 of the Pennsylvania Constitution[4] nor practicable in view of the crime prevention posture of the Act.

Article I, Section 6 of the Commonwealth's Constitution provides: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Similarly, the Sixth Amendment to the United States Constitution insures that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury. . . ." Application of the surety of the peace procedure evokes no violation of appellee's right to trial by jury. Appellee was not charged with an offense triable by jury at common law. The offense was created by statute and the procedure thus prescribed. *Commonwealth v. Taub*, supra. We hold that *Commonwealth v. Taub* was properly decided in that the right to prosecution by indictment and trial by jury do not invalidate this crime-preventive process.

## Due Process and Equal Protection

The court below determined that the surety of peace bond violated the due process clause of the Fourteenth Amendment since: (1) the Commonwealth is not called upon to establish proof beyond a reasonable doubt; (2) the burden of proof (of innocence) falls inappropriately upon the defendant; and (3) defendant

---

[4] "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, *and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage. . . .*" (Emphasis added) Article I, Section 9 of the Pennsylvania Constitution.

is not afforded the opportunity to establish his defense under the procedural provisions of the acts.

A summary proceeding does not constitute an abuse of due process where the record discloses that a sufficient information was read to the accused, he pleaded not guilty, testimony sufficient to support the charge was adduced and the accused was found guilty. *Commonwealth ex rel. Jenkins v. Costello*, 141 Pa. Superior Ct. 183, 14 A. 2d 567 (1940). A defendant is convicted absent due process only where the proceedings are so summary and informal that there is a lack of accusation in proper form, notice and opportunity to interpose a defense. The surety of peace procedure requires the filing of complaint and a "full hearing and investigation of the facts." Only when evidence is shown to the satisfaction of the justice that a threat was made with malicious intent and that the threat put the complainant in fear or danger of injury can the justice bind over defendant with sufficient surety.

That the prosecution is not put to its proof, as determined by the court below, is not evident from the express language of the statute. Nor is it supported by the substantial evidentiary record below. The position that defendant is given no opportunity to present a defense is unfounded. Defendants under the surety of peace proceeding have the right to be represented by counsel and can rebut the prosecutor's testimony with respect to each element of the charged offense. If the prosecutor fails to prove any element of the offense to the satisfaction of the justice or judge, the action is dismissed. *Commonwealth v. Baker*, 30 Pa. D. & C. 457 (1937).

The court below also determined that the surety of peace provisions violated the equal protection clause of the Fourteenth Amendment. If appellee's indigency had prevented him from posting bond and paying costs, with the result that appellee was imprisoned, then

the lower court's analysis respecting equal protection might bear closer scrutiny. This Court, however, will not consider an illusory controversy. The issue of equal protection is not justiciable under the facts of this case.

The order of the Common Pleas Court is reversed and the case remanded for the purpose of determining factually whether, at this time, the surety of the peace bond need necessarily be posted.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

This appeal raises the interesting question of whether the Surety of Peace Act of March 31, 1860, P. L. 427, §6, 19 P.S. §23, as amended by the Act of March 18, 1909, P. L. 42, §1, 19 P.S. §24, violates the Federal and State Constitutions in its failure to provide an alleged offender the right to trial by jury.[1] In my judgment this is a most significant decision, not only because of the need in our law of a provision that will enable a court to take prompt and effective action to deter a

---

[1] "If any person shall threaten the person of another to wound, kill or destroy him, or do him any harm in person or estate, and the person threatened shall appear before a justice of the peace, and attest, on oath or affirmation, that he believes that by such threatening he is in danger of being hurt in body or estate, such person so threatening as aforesaid shall be bound over, with one sufficient surety, to appear at the next sessions, according to law, and in the meantime to be of his good behavior, and keep the peace towards all citizens of this commonwealth. If any person, not being an officer on duty in the military or naval service of the state or of the United States shall go armed with a dirk, dagger, sword or pistol, or other offensive or dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his family, person or property, he may, on complaint of any person having reasonable cause to fear a breach of the peace therefrom, be required to find surety of the peace as aforesaid.

"In all cases of surety of the peace, the justice of the peace before whom such case is instituted shall, before he binds any one

threatened or imminent wrong, but also because the right to jury is so basic in our fabric of jurisprudence that its denial in any instance should be fully explained and cautiously limited. While I agree with the conclusion of the majority that this section does not offend either the United States or the Pennsylvania Constitutions in its failure to provide the right of trial by jury, I do so for the reasons set forth below.

The Sixth Amendment of the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . ."

In *Duncan v. Louisiana*, 391 U.S. 145 (1968), the United States Supreme Court held that this Sixth Amendment guarantee as applied to the States through the Fourteenth Amendment required that defendants accused of serious crimes be afforded the right of trial by jury. It also recognized and reaffirmed the long-established view that so-called "petty offenses" may be tried without a jury. This distinction was again upheld by a majority of the court in *Baldwin v. New York*, 399 U.S. 66 (1970). Thus, it is clear that the Federal constitutional requirement of trial by jury is not absolute and does not require a jury trial for every criminal offense.

---

over to the next term of the court of quarter sessions and in the meantime to keep the peace, upon the oath of another, as provided by section six of the act of March thirty-one, one thousand eight hundred and sixty (Pamphlet Laws, four hundred and twenty-seven), enter into a full hearing and investigation of the facts; and shall only bind over the defendant when the evidence shows, to the satisfaction of the justice, that the prosecutor's or prosecutrix's danger of being hurt in body or estate is actual, and that the threats were made by the defendant maliciously and with intent to do harm."

While the division of the Court in *Baldwin*[2] and the change in the membership of that Court since that decision leave open the question as to the precise definition of "petty offense", it seems clear that the most relevant factor in making that determination is the severity of the maximum penalty authorized for the offense. Moreover, while there is now serious question as to what period of imprisonment will render an offense "serious", and whether the states will be permitted to develop their own standards in this area,[3] it is reasonably apparent that an offense which carries no threat of imprisonment may be classified as petty. See, *Dyke v. Taylor Implement Co.*, 391 U.S. 216, 220 (1968); *Cheff v. Schnackenberg*, 384 U.S. 373 (1966).

Under the Pennsylvania Surety of Peace procedure, the legislature has not seen fit to expressly impose any term of imprisonment; rather it has been content to provide that the violator "shall be bound over, with one sufficient surety, to appear at the next sessions, according to law, and in the meantime to be on his good behavior." My research has revealed no case where a restriction short of actual confinement has been considered justification to classify an offense as serious.

---

[2] In *Baldwin*, WHITE, J., joined by BRENNAN and MARSHALL, JJ., stated that no offense can be deemed "petty" for purposes of the right to trial by jury where imprisonment for more than six months is authorized. BLACK, J., joined by DOUGLAS, J., took the position that the Constitution guarantees a jury trial in all criminal prosecutions regardless of whether the offense charged is "petty" or "serious". BURGER, C.J., dissented, finding nothing in the Constitution that would invalidate the particular New York City trial scheme at issue. HARLAN, J., dissented, stating that he would not encumber the states with a federal definition of "petty" offense. STEWART, J., dissented against the use of the "incorporation" theory of the Fourteenth Amendment.

[3] See *Baldwin v. New York*, supra, BURGER, C.J., dissenting, 399 U.S. at 76, and *Williams v. Florida*, HARLAN, J., dissenting, 399 U.S. 78 at 117 (1970).

I am, therefore, convinced that the Surety of Peace procedure does not offend the Federal Constitution.

The Pennsylvania Constitution contains two provisions concerning trial by jury. The first is Article I, Section 6, which provides: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." One must therefore look to the common law at the time of the writing of the Constitution to determine whether the Surety of Peace procedure traditionally included a right to trial by jury. See, *William Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A. 2d 59 (1961) cert. denied 368 U.S. 897. Blackstone describes the common law procedure as follows: "1. This security consists in being bound, with one or more sureties, in a recognizance or obligation to the king, entered on record, and taken in some court or by some judicial officer; whereby the parties acknowledge themselves to be indebted to the crown in the sum required, (for instance £100,) with condition to be void and of none effect if the party shall appear in court on such a day, and in the mean time shall keep the peace, either generally toward the king and all his liege people, or particularly, also, with regard to the person who craves the security. Or, if it be for the good behavior, then on condition that he shall demean and behave himself well (or be of good behavior,) either generally or specially, for the time therein limited, as for one or more years, or for life. This recognizance, if taken by a justice of the peace, must be certified to the next sessions, in pursuance of the statute 3 Hen. VII.c.1; and if the condition of such recognizance be broken by any breach of the peace in the one case, or any misbehavior in the other, the recognizance becomes forfeited or absolute; and being *estreated* or extracted (taken out from among the other records) and sent up to the Exchequer, the party and his sureties having now become the king's absolute debtors, are sued for the several sums in which they

are respectively bound. "2. Any justices of the peace, by virtue of their commission, or those who are *ex officio* conservators of the peace, as was mentioned in a former volume, may demand such security according to their own discretion; or it may be granted at the request of any subject, upon due cause shown, provided such demandant be under the king's protection. . . ." IV Blackstone's Commentaries pp. 252-253 (1850).

It is apparent from Blackstone's account that at common law surety of peace did not contemplate trial by jury. The legislature's decisions to continue to follow that procedure therefore does not offend Article I, Section 6, of our Constitution.

The second provision in our State Constitution referring to the right of trial by jury presents a more difficult problem. Article I, Section 9 provides, *inter alia*, that: ". . . the accused hath a right . . . in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage. . . ."

At common law, there was a class of summary offenses that were not tried before a jury, IV Blackstone's Commentaries p. 280 (1850), and Pennsylvania has continued to adhere to that practice. See, *Commonwealth v. Jackson*, 146 Pa. Superior Ct. 328, 333-334, 22 A. 2d 299 (1941), aff'd. on the opinion below, 345 Pa. 456, 28 A. 2d 894 (1942). The applicability of Article I, Section 9, therefore depends upon whether this is a prosecution by information, or whether it is a "summary offense".

At first blush, the issue would seem to depend upon the procedural mechanism employed to commence the suit. However, it would derogate from the fundamental rights guaranteed in that section (trial by jury, speedy trial, etc.) to suggest that the existence of these basic rights hinge upon the particular procedure that the legislature might design to initiate the action. When

this Court was called upon to interpret an analogous provision guaranteeing that all persons accused of "indictable" crimes would receive the protection afforded by a grand jury,[4] we focused on the nature of the maximum punishment authorized for such crimes. *Commonwealth v. Cano*, 389 Pa. 639, 133 A. 2d 800 (1957). In *Cano*, we acknowledged that "the term 'indictable offense' refers to common law and statutory offenses, the punishments for which are 'infamous' such as death or imprisonment in a penitentiary as distinguished from imprisonment in a county jail." (citations omitted) Therefore, all felonies and most misdemeanors are indictable and other misdemeanors proceed by information. It is significant, however, that *Cano* recognizes a third category known as summary offenses. 389 Pa. at 651. It remains to define summary offense.

In arriving at that definition, I would follow the approach of *Cano* and the federal decisions concerning "petty" offenses, and focus upon the maximum authorized punishment for a particular offense. As I have noted, Surety of Peace violations involve no jail term and therefore can permissibly be adjudicated by summary procedures. Article I, Section 9, does not demand a jury trial in such cases.

Mr. Chief Justice JONES and Mr. Justice POMEROY join in this concurring opinion.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:
I dissent.

Despite the majority's pronouncement to the contrary, The Surety of the Peace Statute, Act of March 31, 1860, P. L. 427, as amended, 19 P.S. §23, provides for a criminal (or at the least, a quasi-criminal) proceeding. Beyond a doubt, the likelihood of incarceration for

---

[4] Art. I, Sec. 10: "No person shall, for any indictable offense, be proceeded against criminally by information. . . ."

those charged thereunder (particularly the indigent defendant) is as great, if not greater, than for those traditionally charged with the commission of crime. Accordingly, it is my view, that defendants charged under the Statute are entitled to the same procedural constitutional protections, including proof of guilt beyond a reasonable doubt, as are all others charged with the commission of crime. See *Santos v. Nahiwa*, 53 Hawaii 40, 487 P. 2d 283 (1970). Cf. *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970); *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428 (1967). "Like many common law doctrines the peace bond has become a non-heroic Don Quixote of the law, which like the last knight errant of chivalry, 'now wanders aimlessly through the reports, still vigorous, but equally . . . dangerous.' While extended applicability of the fourteenth amendment to state proceedings has secured for criminal defendants the right to counsel, to trial by jury, to confrontation and cross-examination, to notice, and to a transcript of lower court proceedings when required for appeal, the defendant in a peace bond proceeding has remained neglected. . . . As [t]he Supreme Court has recently held, [*Winship*, supra, *Gault*, supra] . . . the label attached to a proceeding cannot in and of itself defeat the requirements of the fourteenth amendment. The realities of the proceeding are controlling. 'It is the likelihood of involuntary incarceration . . . which commands observance of the constitutional safeguards of due process.' [*Heryford v. Parker*, 396 F. 2d 393, 396 (10th Cir. 1968)]." 24 Vand. L. Rev. 405, 408-09 (1971) (footnotes omitted).

I would affirm the order of the court of common pleas.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent because the majority is rewriting provisions of the Constitution of Pennsylvania. Article I,

Section 9 of the Pennsylvania Constitution unequivocally states that an accused is entitled to *a speedy public trial by an impartial jury* in all prosecutions by indictment *or information.* The statute in this case, as the majority notes, provides for a prosecution *by information* and is, therefore, specifically covered by Article I, Section 9 of the Pennsylvania Constitution.

When the language of the Constitution is unequivocal, this Court should not limit constitutional guaranties by presuming to discover what somebody meant almost two hundred years ago. Why can we not accept that the writers of the Constitution meant exactly what they said? Why must we presume that they intended exceptions to constitutional guaranties when they never said so in the written Constitution? I concede that sometimes constitutional language, intentionally or unintentionally is equivocal—but not in this case—the appellee properly demanded a jury trial and was entitled to this constitutional guaranty.

Even if a study of the available historical evidence were necessary in this case, I could not reach the majority's conclusion. There is significant historical evidence that the unequivocal language in Article I, Section 9 was intended to prohibit legislative encroachments on a person's right to a jury trial. In the Seventeenth and Eighteenth Centuries, prior to the writing of the Pennsylvania Constitution, such encroachments had become numerous and serious. The writers of the Pennsylvania Constitution could easily have preserved the encroachments by writing them into the Constitution. They did not do so—in prosecutions by indictment or *information.* See Kaye, *Petty Offenders Have No Peers!,* 26 U. Chi. L. Rev. 245 (1959) ; See also Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv. L. Rev. 917 (1926).

I also disagree with the majority's conclusion that *preventive justice* does not run afoul of constitutional guaranties. In *Commonwealth v. Truesdale,* 449 Pa. 325, 296 A. 2d 829 (1972), this Court refused to approve a system of preventive justice because such a system *would be an unprecedented step* and one *fraught with constitutional problems in terms of due process.* The same conclusion is mandated in this case under the interpretation given by the majority to the surety of the peace statute.