## Commonwealth v. Kennedy

*Glenn McCracken, Jr.*, District Attorney, for the Commonwealth.

*Francis X. Caiazza*, for petitioner.

LYON, J., November 7, 1973.—Lois J. Kennedy was ordered by the Court of Quarter Sessions of Lawrence County, Pa., after a full and complete hearing, to post a surety of the peace bond in the amount of $100 at December sessions, 1967, no. 153, and a second surety of the peace bond in the amount of $500 at December sessions, 1967, no. 154. Both bonds were posted on February 1, 1968, in full compliance with the court order. Her petition to be released from the obligations of these bonds is presently before the court for determination.

Article I, §9, of the Pennsylvania Constitution does not demand a jury trial in the surety of the peace cases: Commonwealth v. Miller, 452 Pa. 35, 305 A. 2d 346 (1973). The concurring opinion of Justice Nix in the Miller case, joined by two other Justices, declared that the surety of the peace legislation created a "petty offense," and that the Federal Constitution, therefore, did not require trial by jury in such cases. The Pennsylvania legislature has not seen fit to expressly impose any term of imprisonment; rather it has been content to provide that the violator "shall be bound

over, with one sufficient surety, to appear at the next sessions according to law, and in the meantime to be of his good behavior": Act of March 31, 1860, P. L. 427, 19 PS §23.

The elements of the statutory offense of surety of the peace are: (1) the making of a threat, (2) to some person or his property and, (3) with the result that the threatened person is put in fear or danger of being injured: Act of March 31, 1860, P. L. 427, 19 PS §23. The act provides preventive justice and requires persons of whom there is probable cause to suspect future violent behavior to give full assurance to the public against anticipated offenses: Commonwealth v. Miller, supra.

Blackstone described the common-law procedure for violation of the conditions of a surety of the peace bond to be as follows:

"This security consists in being bound, with one or more securities, in a recognizance or obligation to the king, entered on record, and taken in some court or by some judicial officer whereby the parties acknowledge themselves to be indebted to the crown in the sum required, (for instance 100£.,) with condition to be void and of none effect if the party shall appear in court on such a day, and in the mean time shall keep the peace, either generally toward the king and all his liege people, or particularly, also, with regard to the person who craves the security. Or, if it be for the good behavior, then on condition that he shall demean and behave himself well, (or be of good behavior,) either generally or specially, for the time therein limited, as for one or more years, or for life. This recognizance, if taken by a justice of the peace, must be certified to the next sessions, in pursuance of the statute 3 Hen. VII. c. 1; and if the condition of such recognizance be broken by any breach of the peace in the one case, or

any misbehavior in the other, the recognizance becomes forfeited or absolute; and being estreated or extracted (taken out from among the other records) and sent up to the exchequer, the party and his sureties having now become the king's absolute debtors, are sued for the several sums in which they are respectively bound.

"Any justices of the peace, by virtue of their commission, or those who are *ex officio* conservators of the peace, as was mentioned in a former volume, may demand such security according to their own discretion; or it may be granted at the request of any subject, upon due cause shown, provided such demandant be under the king's protection": IV Blackstone's Commentaries, Lewis's Edition, 252-253, quoted in Commonwealth v. Miller, supra, 452 Pa. at 44-5, 305 A. 2d at 351.

In his dissenting opinion in Commonwealth v. Miller, supra, Justice Roberts severely criticized the surety of peace procedure when he quoted from 24 Vand. L. Rev. 405 (1971) as follows:

"Like many common law doctrines the peace bond has become a non-heroic Don Quixote of the law, which like the last knight errant of chivalry, 'now wanders aimlessly through the reports, still vigorous, but equally . . . dangerous.' While extended applicability of the fourteenth amendment to state proceedings has secured for criminal defendants the right to counsel, to trial by jury, to confrontation and cross examination, to notice, and to a transcript of lower court proceedings when required for appeal, the defendant in a peace bond proceedings has remained neglected."

Three witnesses testified at the evidentiary hearing in the instant proceedings. Two of the witnesses, Mrs. Caroline Kennedy and Mrs. Kenneth Kennedy, were

the prosecutrices in the original surety of the peace actions. Mrs. Kenneth Kennedy is the mother of petitioner's former husband. Mrs. Caroline Kennedy, by reason of the marriage, was a former sister-in-law of petitioner. Both of the prosecutrices testified that the petitioner has not directly molested, threatened or otherwise bothered them during the more than five years that has elapsed since the peace bonds were posted.

The original two surety of the peace bonds were required because it was proved in the former proceedings that petitioner had threatened to kill the prosecutrices and also had threatened to use an automobile to run them down upon the highway. The prosecutrices contended in their testimony at the evidentiary hearing that the existence of the peace bonds prevented petitioner from carrying the threats into execution and requested, for this reason, that the bonds be continued in full force and effect. Each testified that although the threats had been made more than five years ago, they still feared petitioner would carry the threats into execution, particularly if she were released from the obligations of the bonds.

The prosecutrices based their present fears upon two events which occurred during the past 12 months. However, their knowledge of the occurrences were bottomed entirely upon hearsay evidence. Mrs. Kenneth Kennedy testified her son told her approximately one week before the hearing that petitioner told him she intended to hire someone, for the sum of $500 to kill the prosecutrix, and also he had told her that his clothes were ripped off by petitioner on at least one occasion. Mrs. Caroline Kennedy testified she heard that petitioner had contacted her next door neighbor for the purpose of "digging up dirt" upon prosecutrix so that she could later use it against her.

Petitioner expressly denied the hearsay charges made by the prosecutrices and claimed, to the contrary, to have been of good behavior since posting the peace bonds more than five years ago. She also objected to any consideration of the hearsay evidence. We agree that consideration of the hearsay evidence would violate petitioner's right of confrontation guaranteed by the sixth amendment of the Federal Constitution: California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); Barber v. Page, 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968); Pointer v. Texas, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). Although the prosecutrices appeared to be truthful in that they honestly believed what they were told by others, nevertheless, petitioner was denied the right to test or challenge the truth of such statements by cross-examination of the persons who reported the statements to the prosecutrices. The credibility of these persons, who were not in court, was a substantial issue in the instant proceedings. Since it is constitutionally impermissible for the court to consider the hearsay statements of the prosecutrices, the only competent evidence for consideration is the first-hand knowledge of the prosecutrices; namely, (1) petitioner has not directly bothered prosecutrices since posting the bonds, and (2) the prosecutrices remain fearful that petitioner will carry her threats into execution and either kill or do great bodily harm to them.

Pennsylvania's new Crimes Code* creates new crimes proscribing conduct which was formerly noncriminal, except, perhaps, under the surety of the peace law. It also provides a criminal sanction for such violations which consists of either a fine or imprison-

---

* Act of December 6, 1972, P. L. 1068 (No. 334), effective June 6, 1973, 18 PS § 101, et seq.

ment upon conviction. Although the new Crimes Code does not repeal the surety of the peace legislation, it is, indeed, difficult to anticipate conduct cognizable under the surety of the peace law that is not now also punishable, under the Crimes Code, by either a fine or imprisonment. Section 2705 of the code provides: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." Section 2706 provides that a person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another. Section 2709 provides that a person commits a summary offense when, with intent to harass, annoy or alarm another person: (1) he threatens to strike, shove, kick or otherwise threatens to subject him to physical contact; or (2) he follows a person in or about a public place or places; or (3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other persons and which serve no legitimate purpose.

Since the criminal sanction for the violation of these provisions of the new Crimes Code constitutes a far more effective deterrent than a proceeding to collect on a peace bond, it is anticipated that those who formerly would have filed surety of the peace charges, since there was then no other remedy in many cases, will now file criminal charges in order to avail themselves of the better protection afforded by the new Crimes Code. Hence, the prosecutrices' fears that petitioner might no longer be deterred if released from the peace bond are unrealistic. If the petitioner should, after being released from the peace bond, harass the prosecutrices, make serious threats to harm them, or attempt to carry her former threats into execution, she would be in violation of the new Crimes Code and

therefore would be subject to a criminal sanction instead of merely a civil proceeding to collect on the peace bonds.

The American Bar Association has sponsored an in-depth research study of the criminal justice system by the leading scholars and legal practitioners of the country. Their recommendations were submitted to the membership of that organization where the proposals were studied and debated. After the recommendations concerning a particular subject were modified and approved by the membership of the association, the results were published for enlightenment of the judiciary and legal profession in a series of publications collectively known as the "ABA Standards." Section 2.1(d) of the ABA Standard, relating to Sentencing Alternatives and Procedures, provides: ". . . except for a very few particular serious offenses . . . the maximum authorized term of imprisonment ought to be five years and only rarely ten." Section 2.4(b)(ii), which relates to probation, provides: "Neither supervision, the power to revoke, . . . should be permitted to extend beyond a legislatively fixed time, which should in no event exceed two years for a misdemeanor or five years for a felony."

There appears to be no uniform procedure in Pennsylvania concerning the duration of a peace bond. Courts in some judicial districts require a peace bond which, if not violated, expires automatically in one year or less. Courts in other judicial districts require the posting of a peace bond with no time limitation. The peace bonds posted by the instant petitioner contained no time limitation and, therefore, she properly petitioned the court to be released from the obligations imposed by the bonds. We conclude, in the light of our review of the law and the evidence, that the prayer of her petition must be granted. The Pennsylvania appel-

late courts have made clear that a surety of the peace offense is not as serious in the eyes of the law as either a felony or misdemeanor: Commonwealth v. Miller, supra; Commonwealth v. Taub, 187 Pa. Superior Ct. 440, 144 A. 2d 628 (1958). If the nature of petitioner's offense had been either a felony or a misdemeanor and probation had been imposed, she would be wholly free of supervision or other restraint by reason of the crime at the expiration of five and two years, respectively, if the recommendations set forth in the foregoing ABA standard were to be followed. If petitioner had committed a misdemeanor, instead of a surety of the peace violation, her term of probation or imprisonment under the Pennsylvania law would have wholly expired at the expiration of three years in most misdemeanor cases. In Commonwealth v. Duff, 414 Pa. 471, 200 A. 2d 773 (1964), it was held that the period of probation for a completed offense could not exceed the authorized maximum term of imprisonment for the crime. In the light of the Duff decision, there is no logical justification, in the absence of a violation of a condition of the peace bond, for subjecting petitioner to a longer obligation under a peace bond than could have been imposed upon her by means of probation if she had actually committed a more serious misdemeanor offense.

## ORDER OF COURT

Now, November 7, 1973, for the reasons stated in the foregoing opinion it is ordered, adjudged and decreed that petitioner, Lois J. Kennedy, be released from the obligations of the two peace bonds filed by her in the Court of Quarter Sessions of Lawrence County, Pa., December term, 1967, at nos. 153 and 154.